PUBLIC VERSION

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| **DODOTS LICENSING SOLUTIONS LLC,** | |
| **Plaintiff,** | **CASE NO.  6:22-cv-00533-ADA** |
| **v.** | **JURY TRIAL DEMANDED** |
| **APPLE INC., BEST BUY STORES, L.P., BESTBUY.COM, LLC, AND BEST BUY TEXAS.COM, LLC,** | ███████████████ |
| **Defendants.** | |

## DEFENDANTS' OPPOSED MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................... 1

II.     BACKGROUND ..................................................................................................... 2

     A.      DoDots Traces Its Roots To Silicon Valley......................................................... 2

     B.      Apple Is Based In California And Its Witnesses Are There. ............................... 3

     C.      Best Buy Has No Witnesses Relevant To This Case............................................ 4

III.    LEGAL STANDARDS ........................................................................................... 4

IV.     THE NORTHERN DISTRICT OF CALIFORNIA IS CLEARLY THE MORE
        CONVENIENT VENUE FOR THIS CASE. ......................................................... 6

     A.      Venue Is Proper In The NDCA........................................................................... 6

     B.      The Private Interest Factors Strongly Favor Transfer to the NDCA. ................... 6

          1.      The Cost of Attendance And Convenience Of Willing Witnesses
                Strongly Favors Transfer. .......................................................................... 6

          2.      The Relative Ease Of Access To Sources Of Proof Strongly Favors
                Transfer. .................................................................................................... 9

          3.      The Availability Of Compulsory Process Strongly Favors Transfer....... 11

          4.      The Other Practical Problems Factor Is Neutral. ..................................... 13

     C.      The Public Interest Factors Favor Transfer To NDCA....................................... 13

          1.      The Court Congestion Factor Favors Transfer. ...................................... 14

          2.      The Local Interest Factor Favors Transfer............................................. 15

          3.      Familiarity With The Governing Law And Conflicts Of Law Are
                Neutral Factors........................................................................................ 15

V.      CONCLUSION...................................................................................................... 15

WEST/300005235

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*10Tales, Inc. v. TikTok, Inc.*,
    No. 6:20-CV-00810-ADA, 2021 WL 2043978 (W.D. Tex. May 21, 2021) ......................1, 10

*In re Acer America Corp.*,
    626 F.3d 1252 (2010)...........................................................................................................8

*In re Apple Inc.*,
    581 F. App'x 886 (Fed. Cir. 2014) ...............................................................................5, 8, 12

*In re Apple Inc.*,
    818 F. App'x 1001 (Fed. Cir. June 16, 2020) ......................................................................5

*In re Apple Inc.*,
    979 F.3d 1332 (Fed. Cir. 2020).........................................................................................9, 14

*In re Apple Inc.*,
    No. 2022-128, 2022 WL 1196768 (Fed. Cir. April 22, 2022) ...................................5

*Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*,
    No. 6:15-cv-00091, 2016 WL 6909479 (W.D. Tex. Jan. 28, 2016) ..........................5

*Ret. Sys. ex rel. BP P.L.C. v. Hayward*,
    508 F. App'x 293 (5th Cir. 2013) .......................................................................................10

*CloudofChange, LLC v. NCR Corp.*,
    No. 6:19-cv-00513, 2020 WL 6439178 (W.D. Tex. Mar. 17, 2020).........................9

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014).........................................................................................................6

*Datascape, Ltd. v. Dell Techs., Inc.*,
    No. 6:19-cv-00129, 2019 WL 4254069 (W.D. Tex. June 7, 2019) .........................15

*Flexiworld Techs., Inc. v. Amazon.com, Inc.*,
    No. 6:20-cv-00553-ADA, Dkt. No. 101 (W.D. Tex. Aug. 2, 2021)...................................1, 10

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009)........................................................................................5, 6, 11

*In re Google Inc.*,
    No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017) ...................................13

WEST/300005235

*In re Google LLC,*
No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ...................................................7

*HD Silicon Sols. LLC, v. Microchip Tech Inc.,*
No. W-20-CV-01092-ADA, 2021 WL 4953884 (W.D. Tex. Oct. 25, 2021)................1, 6, 12

*In re Hoffman-La Roche, Inc.,*
587 F.3d 1333 (Fed. Cir. 2009)......................................................................................11, 15

*In re HP Inc.,*
No. 2018-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) ...................................................5

*In re Hulu, LLC,*
No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ...............................................8, 12

*InfoGation Corp. v. Google LLC,*
No. 6:20-CV-00366-ADA, Dkt. No. 65 (W.D. Tex. April 29, 2021) ...................................1, 8

*In re Juniper Networks, Inc.,*
14 F.4th 1313 (Fed. Cir. 2021) .....................................................................................6, 13, 14

*MasterObjects, Inc. v. Facebook, Inc.,*
No. 6:20-cv-00087-ADA, Dkt. No. 86 (W.D. Tex. July 13, 2021) ...........................................9

*In re NetScout Sys., Inc.,*
No. 2021-173, 2021 WL 4771756 (Fed. Cir. Oct. 13, 2021)..................................................13

*In re Nintendo Co., Ltd.,*
589 F.3d 1194 (Fed. Cir. 2009).................................................................................................5

*Parus Holdings, Inc. v. Apple Inc.,*
No. 6:21-cv-00968-ADA, Dkt. No. 92 (W.D. Tex. Nov. 29, 2022)............................... *passim*

*Peak Completion Techs., Inc. v. I-TEC Well Solutions, LLC,*
No. A-13-cv-086-LY, 2013 WL 12121002 (W.D. Tex. June 26, 2013) ...................................9

*Polaris Innovations Ltd. v. Dell, Inc.,*
No. SA-16-CV-451, 2016 WL 7077069 (W.D. Tex. Dec. 5, 2016)...................................9, 10

*In re Samsung Elecs. Co., Ltd.,*
2 F.4th 1371 (Fed. Cir. 2021) ................................................................................................14

*Super Interconnect Techs. v. Google LLC,*
No. 6:21-cv-00259-ADA, 2021 WL 6015465 (W.D. Tex. Nov. 8, 2021) .............................13

*In re Toyota Motor Corp.,*
747 F.3d 1338 (Fed. Cir. 2014)................................................................................................5

WEST/300005235

*In re TracFone Wireless, Inc.*,
    852 F. App'x 537 (Fed. Cir. 2021) ..................................................................7

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008)................................................................5, 15

*Uniloc USA, Inc. v. Apple Inc.*,
    No. A-18-cv-990-LY, 2019 WL 2066121 (W.D. Tex. April 08, 2019) ...................................9

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ........................................................5, 6, 8

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .................................................. *passim*

*Wet Sounds, Inc. v. Audio Formz, LLC*,
    No. A-17-cv-141, 2017 WL 4547916 (W.D. Tex. Oct. 11, 2017) ........................................15

**Statutes**

28 U.S.C. § 1404(a) .........................................................................1, 4, 13

**Other Authorities**

Fed. R. Civ. P. 45(c)(1)(A) ................................................................12

Fed. R. Civ. P. 45(c)(1)(B) ................................................................12

iv

Defendants Apple Inc. ("Apple"), Best Buy Stores, L.P., BestBuy.com, LLC, and Best Buy Texas.com, LLC ("Best Buy") (collectively "Defendants") move under 28 U.S.C. § 1404(a) to transfer this case filed by Plaintiff DoDots Licensing Solutions, LLC ("DoDots") to the Northern District of California ("NDCA").

## I.   **INTRODUCTION**

Under a straightforward application of the *Volkswagen* transfer factors, this case should be transferred to the Northern District of California. This case has numerous connections to the NDCA but no relevant connections to this District. In fact, all of the key factors favor transfer, and none favor litigating this case in this District. Notably: (1) Apple has identified three of its employee witnesses in the NDCA, a fourth witness in Oregon, and a fifth in Colorado, but none in this District; (2) at least three of the eleven named inventors (all of whom appear to be third parties) live and work in the NDCA, while none are in Texas; (3) DoDots and its predecessor companies were founded in the NDCA, and DoDots maintains an office in Dana Point, California; (4) the key sources of proof are in the NDCA and none are in this District; and (5) no fact discovery has been taken, and the dates for claim construction and trial are far away.

Indeed, this case falls squarely into the line of recent cases where the Court has granted transfer under § 1404(a) based in large part on the location of relevant witnesses, which the Court properly recognizes as the most critical factor in the transfer analysis. *See Parus Holdings, Inc. v. Apple Inc.*, No. 6:21-cv-00968-ADA, Dkt. No. 92 (W.D. Tex. Nov. 29, 2022); *HD Silicon Sols. LLC, v. Microchip Tech Inc.*, No. W-20-CV-01092-ADA, 2021 WL 4953884 (W.D. Tex. Oct. 25, 2021); *Flexiworld Techs., Inc. v. Amazon.com, Inc.*, No. 6:20-cv-00553-ADA, Dkt. No. 101 (W.D. Tex. Aug. 2, 2021); *10Tales, Inc. v. TikTok, Inc.*, No. 6:20-CV-00810-ADA, 2021 WL 2043978 (W.D. Tex. May 21, 2021); *InfoGation Corp. v. Google LLC*, No. 6:20-CV-00366-ADA, Dkt. No. 65 (W.D. Tex. April 29, 2021). Here too, because the location of

1

relevant witnesses favors transfer and the remaining factors also favor transfer—and none weigh against transfer—the Court should transfer this case to the NDCA.

## II.   BACKGROUND

DoDots filed this action on May 24, 2022 (ECF No. 1), alleging that Apple's operating systems, installers, and the App Store app implemented in iPhone, iPad, Apple Watch, and iPod Touch infringes U.S. Patent Nos. 9,369,545 ("'545 patent"), 8,020,083 ("'083 patent), and 8,510,407 ("'407 patent"). On the same day, DoDots filed suit against Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. ("Samsung") and the same Best Buy defendants as in this case on the same three patents. *See* Case No. 6-22-cv-00535 (W.D. Tex. May 24, 2022).

On September 12, 2022, DoDots filed a First Amended Complaint ("FAC"), making additional indirect infringement claims and additional allegations of Apple's pre-suit knowledge of the asserted patents. ECF No. 32 at ¶¶ 116, 123, 130. On October 11, 2022, Defendants moved to dismiss the FAC on several grounds (ECF No. 46), and on October 25, 2022, DoDots opposed that motion and sought leave to file a proposed Second Amended Complaint. ECF No. 47. On November 8, 2022, Defendants filed their reply brief in support of their motion to dismiss and also opposed DoDots' motion for leave to file a Second Amended Complaint. ECF No. 52. Briefing on both motions closed on November 17, 2022, and the parties filed their joint Case Readiness Status Report on November 30, 2022. ECF No. 54. On December 15, Defendants filed an opposed motion to sever and stay claims against Best Buy under the Customer-Suit Exception. ECF No. 55.

### A.   DoDots Traces Its Roots To Silicon Valley.

DoDots alleges it is a Texas limited liability company with a place of business in Dana Point, California (FAC at ¶ 1)—a location much closer to the NDCA than to this District. However, DoDots traces its roots to Silicon Valley, where its predecessor company, DoDots,

2

Inc., was founded in 1999 by John Kembel and George Kembel, "Stanford engineering, business, and design school alumnae" (FAC ¶ 27), and a third Stanford graduate student. *Id*. at ¶ 29. According to the FAC, "DoDots, Inc. raised over $20M in funding from leading Silicon Valley venture capital companies … ." *Id*. at ¶ 31. Not surprisingly given this history, all eleven named inventors listed their addresses on the face of the patents as Palo Alto, Menlo Park, Sunnyvale, San Francisco, and Mountain View, California—all in the NDCA. And the company that applied for the '545 patent and was the original assignee of the '083 and '407 patents—Mainstream Scientific, LLC—was based in Mountain View, California at the time the applications were filed, and appears to be based in Los Altos, California today (both in the NDCA).

      **B.**      **Apple Is Based In California And Its Witnesses Are There.**

Apple is a California corporation that employs more than 35,000 people in or around its headquarters in Cupertino, California. Apple's management and primary research and development facilities are located in or near Cupertino. The primary operation, marketing, sales, and finance decisions for Apple also occur in or near Cupertino, and Apple business records related to product revenue are located there.

Specific to this case, Apple has teams of engineers who design, develop, and implement the accused features in the accused products, the vast majority of which takes place at or near Apple's Cupertino headquarters. *See* De Atley Decl. ¶¶ 2, 5; Carlson Decl. ¶¶ 2, 5. Also, the relevant Apple employees involved in the marketing, licensing, and sale of the accused products work in or near Cupertino. *See* Harlow Decl. ¶¶ 2, 4; Thai Decl. ¶¶ 2, 4. None are in this District.

Based on DoDots' allegations, the following Apple employees are likely to be witnesses in this case. Three of them live and work in the NDCA (or near Apple's Cupertino headquarters) while the other two are located in Oregon and Colorado:

3

| Name | Title | Office Location | Relevance to this Case |
|------|-------|-----------------|------------------------|
| Dallas De Atley | Senior Software Engineer | Cupertino, California | Involved in development of the accused .ipa file technology since 2007. Created an engineering team responsible for development of .ipa file technology within the CoreOS team in 2008 and managed this team until around 2014. |
| Eric Carlson | Senior Software Engineer, App Installation Technologies | Beaverton, Oregon | Currently oversees the team responsible for development and maintenance of accused .ipa technology. |
| Jackie Harlow | Principal Counsel and Senior Manager, IP Transactions | Boulder, Colorado | Knowledgeable about Apple's patent licenses and patent transaction activities, including activities relevant to the accused technology. |
| Ann Thai | Worldwide Director of Product Marketing, App Store | Cupertino, California | Responsible for managing and developing App Store marketing strategies relating to users, developers, and Apple, from a product and business perspective. |

### C.     Best Buy Has No Witnesses Relevant To This Case.

The Best Buy defendants (Best Buy Stores, L.P., BestBuy.com, LLC, and Best Buy Texas.com, LLC) all have their principal places of business in Richfield, Minnesota. Exs. 1-3. However, the only reason Best Buy is named in this case is because they resell the accused Apple products. In other words, Best Buy has no role in the development of the accused technology, but rather offers for sale and sells the accused products nationwide, as DoDots' infringement contentions confirm. *See, e.g.*, Ex. 42, Cl. 1 (Best Buy infringement contentions).

## III.    LEGAL STANDARDS

Under § 1404(a), the moving party must first show that the claims "might have been brought" in the proposed transferee district. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312-13 (5th Cir. 2008) ("*Volkswagen II*"). Second, the movant must show "good cause" by demonstrating that the "transferee venue is clearly more convenient" than the transferor district. *Volkswagen II* at 315.

WEST/300005235

In evaluating convenience, the district court weighs both private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*. The transferee venue need only be "clearly more convenient," not "far more convenient," for transfer to be appropriate. *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014).

The convenience of the witnesses is the most important factor in the transfer analysis. *In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *2 (Fed. Cir. April 22, 2022); *In re Apple Inc.*, 818 F. App'x 1001, 1003 (Fed. Cir. June 16, 2020); *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009); *Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*, No. 6:15-cv-00091, 2016 WL 6909479, at *7 (W.D. Tex. Jan. 28, 2016). Moreover, "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *see also In re Toyota Motor Corp.*, 747 F.3d at 1341; *In re Apple Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014); *In re Genentech*, 566 F.3d at 1348; *In re TS Tech USA Corp.*, 551 F.3d 1315, 1322 (Fed. Cir. 2008); *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 (Fed. Cir. Sept. 25, 2018). The plaintiff's choice of venue is not a distinct factor

WEST/300005235

in the analysis, *Volkswagen II*, 545 F.3d at 314-15, nor is the location of plaintiff's counsel, *Volkswagen I*, 371 F.3d at 206.

## IV.  THE NORTHERN DISTRICT OF CALIFORNIA IS CLEARLY THE MORE CONVENIENT VENUE FOR THIS CASE.

### A.  Venue Is Proper In The NDCA.

As the Court recently found in *Parus*, venue for this case "would be proper in the NDCA." *Parus Holdings*, No. 6:21-cv-00968-ADA, Dkt. No. 92 at 6. Apple is a California corporation headquartered in Cupertino, California, which is in the NDCA. Thus, venue is proper in the NDCA because the NDCA may exercise personal jurisdiction over Apple. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Accordingly, the Court must consider the private and public interest factors. *Volkswagen II*, 545 F.3d at 315.

### B.  The Private Interest Factors Strongly Favor Transfer to the NDCA.

The private interest factors strongly favor transfer to the NDCA because the overwhelming majority of witnesses and evidence in this case are located there.

#### 1.  The Cost of Attendance And Convenience Of Willing Witnesses Strongly Favors Transfer.

The most important factor in the transfer analysis is the convenience of willing witnesses, and that factor strongly favors transfer here. *Parus Holdings*, No. 6:21-cv-00968-ADA, Dkt. No. 92 at 6; *Genentech*, 566 F.3d at 1343; *HD Silicon Sols. LLC*, 2021 WL 4953884, at *4 ("[T]he Federal Circuit now takes the position that this Court should not accord the convenience of party witnesses less weight.") (citing *In re Juniper Networks, Inc.*, 14 F.4th 1313 (Fed. Cir. 2021)). To assess this factor, the Fifth Circuit has established the "100-mile rule," which provides that the venue with the shorter average distance for witnesses to travel is favored when two potential venues are more than 100 miles apart. *Volkswagen I*, 371 F.3d at 205. But the Federal Circuit has refused to apply the rule "rigidly," such as where it may "result in all identified witnesses having

WEST/300005235

to travel away from their home and work in order to testify in Texas, which would 'produce results divorced from' the rule's underlying rationale." *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *5 (Fed. Cir. Sept. 27, 2021) (*quoting In re TracFone Wireless, Inc.*, 852 F. App'x 537, 539 (Fed. Cir. 2021)). This has led the Federal Circuit to disregard distance altogether in favor of considering travel-time statistics. *See, e.g.*, *In re Google LLC*, No. 2021 WL 4427899 at *4 ("[T]ime is a more important metric than distance.").

Just as in *Parus*, a number of the witnesses knowledgeable about the accused technology, including all but two of the Apple witnesses Apple expects to call at trial, are based in the NDCA, and none are based in this District. *See* De Atley Decl.; Thai Decl.; *see also Parus Holdings*, No. 6:21-cv-00968-ADA, Dkt. No. 92 at 7. Two of Apple's witnesses are a short car ride from the courthouses in the NDCA, and three of them live and work more than 1,700 miles from Waco, Texas. *See* Exs. 4-5. There are no nonstop flights available to Waco Regional Airport from the San Francisco and San Jose international airports. *See* Exs. 8-9. From the San Jose and San Francisco international airports, combined, there are only eight non-stop flight options to the Austin airport, in the first week of January. *See* Ex. 10. One of the witnesses, Eric Carlson, lives in Portland area of Oregon where he works from home for part of the week and for the other part, works out of the Beaverton, Oregon Apple office. Both Oregon locations are even further from Waco than the Apple employees located in California. *See* Ex. 5. Jackie Harlow, who lives in Colorado and works out of the Boulder Apple office, is the only witness closer to Waco than to the NDCA, but only by a slight margin—Waco is approximately 866 miles away whereas San Jose, California is 1,262 miles away. *See* Exs. 6-7. That being said, while there are multiple direct flights from Boulder, Colorado to the San Jose Airport, there are none to Waco. *Compare* Ex. 11 (no direct flights from Boulder to Waco) with Ex. 12 (seven direct flights from

WEST/300005235

Boulder to San Jose). All five of the witnesses have "relevant and material information," which is the Court's inquiry here. *Parus Holdings*, No. 6:21-cv-00968-ADA, Dkt. No. 92 at 9 (quoting *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021)).

In short, the Apple witnesses would face significantly greater travel time, distance, and expense if required to attend trial in Waco. Where the distance between two districts exceeds 100 miles, "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-05. If this case remains in this District, the Apple witnesses would need to spend days away from home and work, as opposed to several hours, for two of the witnesses, if the trial takes place in NDCA. For the remaining Apple witnesses, travel to the NDCA is much less burdensome than to Waco as well.  The travel burden is significant and has been cited as a key reason why transfer is often appropriate. *See Volkswagen II*, 545 F.3d at 317 ("Witnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family and community."); *see also In re Acer America Corp.*, 626 F.3d 1252, 1255 (2010). For all of these reasons, it is clearly more convenient for NDCA-based witnesses to attend trial in NDCA. *Volkswagen II*, 545 F.3d at 317; *In re Apple Inc.*, 581 F. App'x at 889; *InfoGation*, No. 6:20-CV-00366-ADA, Dkt. No. 65 at 8 ("the cost of attendance for these witnesses will be less if the case is tried in the SDCA than if it were tried in WDTX").

DoDots no doubt will point to the fact that Apple has 7,000 employees in this District. *See* FAC at ¶ 2. However, neither the accused technology nor the accused products themselves were developed in Waco, Austin, or anywhere else in Texas. *See* De Atley Decl. at ¶¶ 3, 5; Carlson Decl. at ¶¶ 3,5. Just as important, Apple has not located a single Apple employee in this District who would be a witness at trial. In that situation, the presence of employees in the

8

District does not impact the transfer analysis. *See Uniloc USA, Inc. v. Apple Inc.*, No. A-18-cv-990-LY, 2019 WL 2066121 at *3 (W.D. Tex. April 08, 2019); *Peak Completion Techs., Inc. v. I-TEC Well Solutions, LLC*, No. A-13-cv-086-LY, 2013 WL 12121002 at *3 (W.D. Tex. June 26, 2013) (presence of an office and personnel in the district did not weigh against transfer because those individuals were not likely witnesses). Equally important, "the Federal Circuit has already found that more witnesses in the NDCA should mark this factor in favor of transfer." *Parus Holdings*, No. 6:21-cv-00968-ADA, Dkt. No. 92 at 11. Similarly, the presence of Best Buy stores in this District does not impact the transfer analysis. Employees at Best Buy stores will not be witnesses in this case because BestBuy does not participate in the design or development of the Accused Products. Where a number of likely witnesses are in the transferee district and none are in the transferor district, the most important factor in the transfer analysis strongly favors transfer. *See MasterObjects, Inc. v. Facebook, Inc.*, No. 6:20-cv-00087-ADA, Dkt. No. 86 (W.D. Tex. July 13, 2021).

### 2. The Relative Ease Of Access To Sources Of Proof Strongly Favors Transfer.

When the bulk of relevant evidence is located in the requested transferee district, the ease of access to evidence factor strongly favors transfer. "This factor relates to the ease of access to non-witness evidence, such as documents and other physical evidence … ." *In re Apple Inc.*, 979 F.3d 1332, 1339 (Fed. Cir. 2020). Despite advances in technology that simplify transfer of some electronic files, "precedent dictates the Court consider where sources of proof are physically located." *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-00513, 2020 WL 6439178, at *3 n.2 (W.D. Tex. Mar. 17, 2020).

In *Polaris Innovations Ltd. v. Dell, Inc.*, No. SA-16-CV-451, 2016 WL 7077069 (W.D. Tex. Dec. 5, 2016), the defendant had an Austin office with 300 employees, including at least

one Austin-based engineer with knowledge of the accused products. *Id.* at \*3. Still, the Court found that the bulk of the evidence was in California, and that this factor thus weighed in favor of transfer. *Id.* at \*5; *see also 10Tales, Inc.*, 2021 WL 2043978, at \*2 ("If TikTok were to possess any physical documentation valuable to the adjudication of this dispute, 10Tales' amended complaint implies that such information will likely come from the NDCA or somewhere else in California."). This Court recently reached a similar conclusion in *Flexiworld*. No. 6:20-cv-00553-ADA, Dkt. No. 101 at 8-9.

Here, although Apple has a campus in Austin in this District, the inquiry is where documents relevant to this case are located—and none are in this District. *City of New Orleans Emps.' Ret. Sys. ex rel. BP P.L.C. v. Hayward*, 508 F. App'x 293, 297 (5th Cir. 2013) (affirming transfer to where "the relevant documents … could be found," despite presence of documents "of questionable relevance" in the transferor forum (quotations omitted)); *Volkswagen II*, 545 F.3d at 316 (analyzing only location of documents "relating to the accident" at issue). Apple's witnesses with relevant and material information—software engineers and marketing and licensing personnel—have confirmed that Apple's relevant sources of proof are primarily in the NDCA. *See* De Atley Decl. ¶ 7; Thai Decl. ¶ 6. The rest are in the Portland area in Oregon, or in Boulder, Colorado, where Eric Carlson and Jackie Harlow, live and work, respectively. *See* Carlson Decl. ¶ 7; Harlow Decl. ¶ 6. Any Apple documents in this District are not relevant to the claims or defenses in this case. De Atley Decl. ¶ 8; Carlson Decl. ¶ 7; Thai Decl. ¶ 7; Harlow Decl. ¶ 7.

Specifically, the majority of the development of the accused software technology and the accused products themselves took place and continues to take place at Apple's Cupertino headquarters, with some of the accused .ipa file technology development occurring in Oregon. Carlson, Decl. ¶¶ 3, 5; De Atley, Decl. ¶¶ 3, 5. The source code related to the accused software

technology was developed and tested in the NDCA, and access to that source code happens on a need-to-know basis by Apple employees in the NDCA and in Portland, Oregon. Carlson Decl. ¶ 7; De Atley, Decl. ¶ 7. And the Apple documents related to the marketing, sales, and financial information for the accused products are in Cupertino, California. *See* Thai Decl. ¶ 6. The same is true of Apple's licensing documents. Harlow Decl. ¶ 6. Thus, the bulk of the sources of proof for this case are in NDCA.  As for Best Buy, it is clear from DoDots' infringement contentions that DoDots only alleges that Best Buy sells the accused products at store locations and nothing else. *See* Ex. 42. As such, Best Buy has no documents about the accused software because it has no role in developing that software.

Turning to the DoDots side, Apple expects that Mainstream Scientific LLC, the original applicant of the '545 patent and the original assignee of the '083 and '407 patents, will have documents about the filing, prosecution, and reduction to practice of the asserted patents. Mainstream Scientific is located in Los Altos, California, in the NDCA. *See* Ex. 13. Just as important, at least three of the eleven named inventors appear to reside in the NDCA today. *See* Exs. 14-16 and 19. And because DoDots itself was founded in Silicon Valley and has a place of business in Dana Point, California, Apple expects that its sources of proof are in California. Conversely, Apple is not aware of any unique, relevant sources of proof in this District. This factor therefore strongly favors transfer to the NDCA.

### 3. The Availability Of Compulsory Process Strongly Favors Transfer.

The availability of compulsory process factor strongly favors transfer because key third-party witnesses are within the subpoena power of the NDCA and not this District. *See Genentech*, 566 F.3d at 1345 (compulsory-process factor "weighs in favor of transfer" where "no witness [] can be compelled to appear in the Eastern District of Texas"); *In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1337-38 (Fed. Cir. 2009) (transfer favored when transferee forum

11

has absolute subpoena power over a greater number of third-party witnesses). "Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Parus Holdings*, No. 6:21-cv-00968-ADA, Dkt. No. 92 at 15. Under the Federal Rules, a court may subpoena a witness to trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A), (B).

Here, at the time they applied for the asserted patents, all eleven named inventors listed cities in the NDCA as their residences. *See* Inventors listed on face of the '545 patent, '083 patent, and '407 patent. Today, research indicates that three of the named inventors still live and work in the NDCA (*see* Exs. 14-16 and 19), while one inventor has relocated to Los Angeles (within the NDCA's subpoena power) (*see* Exs. 17-18), one has moved to Orange County, California (also within the NDCA's subpoena power) (*see* Exs. 20-21), three have moved to Colorado (*see* Exs. 22-27), one has relocated to Oregon (*see* Exs. 28-29), another has taken up residence in Washington state (*see* Exs. 30-31), and one has returned home to South Korea (*see* Exs. 32-33). None of the eleven named inventors, however, appear to live or work in this District or anywhere else in Texas. Furthermore, Mainstream Scientific LLC, the applicant and original assignee of the asserted patents, is located in Los Altos, California, in the NDCA and a 20-minute drive from the San Jose courthouse. *See* Exs. 13 and 34. "This factor will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple Inc.*, 581 F. App'x at 889; *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *4 (Fed. Cir. Aug. 2, 2021); *HD Silicon Sols. LLC*, 2021 WL 4953884 at *4 (same).

12

Here, Apple has identified at least <u>six</u> individual or corporate third-party witnesses within the NDCA's subpoena power and zero in this District. The fact that Apple does not yet know whether these third-party witnesses will testify at trial without a subpoena does not affect the transfer analysis. *See In re Juniper Networks*, 14 F.4th at 1321 ("That no party expressly identified any witness as unwilling to testify, however, does not cut in favor of conducting this litigation in the Western District of Texas rather than in the Northern District of California."); *Super Interconnect Techs. v. Google LLC*, No. 6:21-cv-00259-ADA, 2021 WL 6015465, at *5 (W.D. Tex. Nov. 8, 2021). This factor strongly favors transfer.

### 4.      The Other Practical Problems Factor Is Neutral.

The final private interest factor, "all other practical problems that make trial of a case easy, expeditious and inexpensive," is neutral or slightly favors transfer here. This case is in its early stages, with no discovery having been taken. The Court recently set a claim construction hearing date for May 24, 2023 and trial for June 24, 2024. ECF No. 59. And although there is a DoDots case against Samsung in this District on these patents, the mere fact of co-pending litigation does not weigh against transfer. *In re NetScout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at *5 (Fed. Cir. Oct. 13, 2021) ("[W]e have rejected as a general proposition that the mere co-pendency of infringement suits in a particular district automatically tips the balance in the non-movant's favor.") (citations omitted). "To hold otherwise, [the Court] would be effectively inoculating a plaintiff against convenience transfer under § 1404(a) simply because it filed related suits against multiple defendants in the transferor district." *In re Google Inc.*, No. 2017-107, 2017 WL 977038, *3 (Fed. Cir. Feb. 23, 2017). Thus, this factor does not weigh against transfer.

### C.      The Public Interest Factors Favor Transfer To NDCA.

The public interest factors all favor transfer to the NDCA or are neutral.

13

### 1.     The Court Congestion Factor Favors Transfer.

The first public interest factor, the administrative difficulties flowing from court congestion, is neutral or slightly favors transfer to the NDCA. On this factor, the Federal Circuit has opined that "a 'proper' analysis 'looks to the number of cases per judgeship and the actual average time to trial.'" *Parus Holdings*, No. 6:21-cv-00968-ADA, Dkt. No. 92 at 20, quoting *In re Juniper Networks*, 14 F.4th at 1321.

Here, the number of patent cases per judgeship in the NDCA versus this District favors transfer. As of December 18, 2022, this District reported 707 pending patent cases being presided over by the judge assigned to this case. *See* Ex. 35. In contrast, the NDCA reported 254 pending patent cases being presided over by 20 different judges, which averages to 12.7 patent cases per judgeship. *See* Ex. 36. The ratio of 707 to 12.7 patent cases per judgeship tilts this factor in favor of the NDCA. On the other hand, the NDCA reported an average time to trial in patent cases of 39 months, while the average time to trial for patent cases in this District is reportedly 30 months over the same time period. *See* Ex. 38 (showing 929.3 days as the mean time to trial in WDTX); *see also* Ex. 37 (showing 1196 days as the mean time to trial in NDCA). This District's relatively faster time to trial in patent cases tilts this factor back towards this District. Thus, weighing the much lower cases-per-judgeship in the NDCA against the faster time to trial in this District, this factor is neutral or slightly favors transfer.[1]

---

[1] DoDots may point to this Court's practice of setting an early trial date as a factor favoring transfer. But a fast-paced prospective schedule does not have significant weight in the transfer analysis. *See In re Apple Inc.*, 979 F.3d 1332, 1344 (Fed. Cir. 2020) ("We have previously explained that a court's general ability to set a fast-paced schedule is not particularly relevant to this factor."); *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1380-81 (Fed. Cir. 2021) ("[W]e cannot say that the prospective speed with which this case might be brought to trial is of particular significance in these cases.").

WEST/300005235

2. **The Local Interest Factor Favors Transfer.**

The local interest factor also favors transfer to the NDCA. That District has a strong local interest in this case because: (1) Apple's work on the design and development of the accused software and products happened (and happens) there; (2) Apple's headquarters are located there; and (3) two out of four of Apple's likely witnesses are based there. *See Wet Sounds, Inc. v. Audio Formz, LLC*, No. A-17-cv-141, 2017 WL 4547916, at \*4 (W.D. Tex. Oct. 11, 2017). In contrast, DoDots does not appear to have any connection to this District. In fact, DoDots, Mainstream Scientific LLC, and the named inventors all have connections to the NDCA, further underscoring the local interest there. Therefore, this case "calls into question the work and reputation of several individuals residing" in the NDCA. *In re Hoffman-La Roche, Inc.* 587 F.3d 1333, 1336 (Fed. Cir. 2009). The NDCA's interest in this case is "self-evident." *Id.* at 1338.

Although Apple has a presence in Austin, no relevant witnesses reside there and the accused technology was not developed there. In similar situations, this Court and others have favored transfer to the court with interests more closely connected with the issues to be tried. *See Datascape, Ltd. v. Dell Techs., Inc.*, No. 6:19-cv-00129, 2019 WL 4254069, at \*3 (W.D. Tex. June 7, 2019). This factor therefore strongly favors transfer.

3. **Familiarity With The Governing Law And Conflicts Of Law Are Neutral Factors.**

The last two public interest factors are neutral—there are no perceived conflicts of law, and both districts are equally qualified to apply patent law. *TS Tech*, 551 F.3d at 1320-21.

## V. <u>CONCLUSION</u>

For all of the reasons set forth above, Defendants respectfully request that the Court transfer this case to the NDCA because it is the clearly more convenient venue.

WEST/300005235

Dated: January 4, 2023

Respectfully submitted,

*/s/ John M. Guaragna*
John M. Guaragna (Bar No. 24043308)
**DLA PIPER LLP (US)**
401 Congress Avenue, Suite 2500
Austin, TX 78701
Telephone: (512) 457-7000
Facsimile: (512) 457-7001
john.guaragna@us.dlapiper.com

Sean Cunningham (*pro hac vice*)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101
Telephone: (619) 699-2700
Facsimile: (619) 699-2701
sean.cunningham@us.dlapiper.com

Erik Fuehrer (*pro hac vice*)
Sangwon Sung (*pro hac vice*)
Marinna C. Radloff (*pro hac vice*)
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, CA 94303-2214
Tel: 650.833.2000
Fax: 650.833.2001

Jackob Ben-Ezra (Bar No. 24073907)
**DLA PIPER LLP (US)**
845 Texas Avenue
Suite 3800
Houston, TX 77002-5005
Tel: 713.425.8431
Fax: 713.300.6031

*Attorneys for Defendants Apple Inc., Best Buy
Stores, L.P, BestBuy.com, LLC, and Best Buy
Texas.com, LLC*

WEST/300005235

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(g), counsel for Defendants have conferred with counsel for DoDots in a good faith effort to resolve the matter presented herein. Counsel for DoDots opposes the instant Motion.

*/s/ John M. Guaragna*
John M. Guaragna

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed electronically on January 4, 2023, and a copy has been served on all counsel who have consented to electronic service via electronic mail.

*/s/ John M. Guaragna*
John M. Guaragna

17