**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| DODOTS LICENSING SOLUTIONS LLC,<br><br>       Plaintiff,<br><br>   v.<br><br>APPLE INC., BEST BUY STORES, L.P.,<br>BESTBUY.COM, LLC, and BEST BUY<br>TEXAS.COM, LLC,<br><br>       Defendants. | Case No.: 6:22-cv-00533-ADA |

**PLAINTIFF DODOTS LICENSING SOLUTIONS LLC'S**
**<u>RESPONSE TO DEFENDANTS' MOTION TO TRANSFER VENUE</u>**

# **TABLE OF CONTENTS**

I.    Introduction ............................................................................................................. 1

II.   Background ............................................................................................................. 2

III.  Argument ............................................................................................................... 2

    A.    Defendants fail to show that this case could have been brought in NDCA ............. 2

    B.    The private interest factors do not weigh in favor of transfer ................................. 3

        1.    The cost of attendance and convenience for willing witnesses ................. 4

        2.    Relative ease of access to sources of proof weighs against transfer ......... 10

        3.    The availability of compulsory process to secure witness attendance ...... 11

        4.    Other practical problems that make trial easy, expeditious, inexpensive . 14

    C.    The public interest factors ..................................................................................... 14

IV.   Conclusion. ........................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abstrax, Inc. v. Hewlett-Packard Co.*,
    2014 WL 5677834 (E.D. Tex. Nov. 4, 2014) ............................................................9

*Cordis Corp. v. Bos. Sci. Corp.*,
    561 F.3d 1319 (Fed. Cir. 2009) .............................................................................13

*In re Google Inc.*,
    No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017) ....................................14

*In re Google LLC*,
    58 F.4th 1379 (Fed. Cir. 2023) .............................................................................15

*Hoffman v. Blaski*,
    363 U.S. 335 (1960) (superseded on other grounds) ..............................................2

*In re HP Inc., No. 2018-149*,
    2018 U.S. App. LEXIS 27963 (Fed. Cir. Sep. 25, 2018) ........................................12

*Monterey Rsch., LLC v. Broadcom Corp.*,
    No. W-21-CV-00541-ADA, 2022 U.S. Dist. LEXIS 30364 (W.D. Tex. Feb.
    21, 2022) ...................................................................................................4, 6, 8

*In re NetScout Sys., Inc.*,
    No. 2021-173, 2021 WL 4771756 (Fed. Cir. Oct. 13, 2021) ..................................14

*Pers. Audio, LLC v. CBS Corp.*,
    2014 U.S. Dist. LEXIS 37089 (E.D. Tex. Mar. 20, 2014) ........................................8

*PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*,
    No. 6:11-cv-655, 2013 WL 9600333 (E.D. Tex. Mar. 21, 2013) ............................14

*In re Planned Parenthood Fed'n of Am., Inc.*,
    52 F.4th 625 (5th Cir. 2022) ...........................................................................11, 13

*In re Radmax*,
    720 F.3d 285 (5th Cir. 2013) ...............................................................................10

*Rockstar Consortium LP v. Google Inc.*,
    2014 WL 6480772 (E.D. Tex. Nov. 18, 2014) .........................................................8

*Scramoge Tech. v. Apple Inc.*,
    21-cv-579 ...........................................................................................................4, 9

*In re SK Hynix Inc.*,
    2021-114, 2021 U.S. App. LEXIS 5674 (Fed. Cir. Feb. 25, 2021) ...........................................3

*Sonrai Memory Ltd. v. Apple Inc.*,
    No. 6:22-cv-00787-ADA, ECF No. 57 (W.D. Tex. Apr. 12, 2023) ............................9, 14, 15

*SVV Tech. Innovations, Inc. v. Micro-Star Int'l Co., Ltd.*,
    No. 6:22-cv-511, ECF No. 31 (W.D.Tex. Apr 4, 2023) ........................................................10

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) (superseded on other grounds) ..............................................................3

*In re Vistaprint Ltd.*,
    628 F.3d at 1346 n.3 ...............................................................................................................14

*Weatherford Tech. Holdings, LLC v. Tesco Corp.*,
    No. 2:17-CV-00456-JRG, ECF No. 53 (E.D. Tex. May 22, 2018) ...........................................8

# I.    Introduction

Defendants' motion rests on the *false* premise that there are no relevant witnesses in Texas. Defendants then argue for transfer because Apple has a few employees in/near the Northern District of California ("NDCA") who may have relevant information. But Defendants cannot show that NDCA is "clearly more convenient" than the Western District of Texas ("WDTX"). When it comes to relevant witnesses and information in WDTX, Defendants buried their head in the sand, hoping that merely identifying people in/near NDCA would carry the day. It does not.

This case, which rightfully belongs in WDTX, involves technology for the downloading and display of mobile apps on Apple devices. Even though Apple has 7,000 employees in this district, Apple sought to avoid venue here by narrowly (and incorrectly) defining the accused features in this case as only .ipa, .plist, .NIB, .XIB, and/or Storyboard files (what Apple calls "Accused Features") and pointing to employees in/near NDCA that deal with only *one* aspect (development) of *one* of these files (.ipa files).

Having artificially narrowed the scope of DoDots' allegations, Apple then says it has not "located a single Apple employee in this District" that could be a witness. But that is only because Apple never looked. Defendants' 30(b)(6) witnesses testified that *no investigation* regarding relevant witnesses in Texas was ever performed. Without performing an investigation into Texas witnesses, Apple should have never filed its motion in the first place. Worse, to support its flimsy motion, Apple stonewalled every discovery request seeking information about activities in Texas. Apple never identified a single person in Texas in interrogatory responses, documents, or through their corporate witnesses. But DoDots found them anyway.

Uncovering the extent of Apple's relevant witnesses in Texas was not easy. It appears Apple even took steps resulting in relevant Texas witnesses erasing their affiliation with Apple from their LinkedIn profiles. And while this case involves more than just the five filetypes that

Apple identified, DoDots focused its discovery only on what Apple claimed to be the Accused Features. Even with no disclosures from Apple and a narrowed description of relevance, DoDots was able to independently find ***more than 100 relevant Apple witnesses in this District.*** DoDots peeled back the layers of Apple's obstruction, and thoroughly dismantled Apple's repeated claim that nothing relevant happens in Texas – and with it, the sole basis for Defendants' motion.

## II.     Background

The patents-in-suit—U.S. patent nos. 9,369,545; 8,020,083; 8,510,407—cover technology developed to access internet content on devices using "Dots" instead of through a web browser. In the late 1990s, DoDots' technology was hailed as groundbreaking and dozens of customers used the technology (e.g., ABC, Bloomberg, CNET, and Merriam-Webster). Although the company was an unfortunate victim of the dot-com bubble, its technology survives to this day and its "Dots" are now known as "apps" that ubiquitously populate mobile devices, including the accused Apple phones, watches, and tablets that access app stores and use software to download mobile apps.

## III.    Argument

### A.     Defendants fail to show that this case could have been brought in NDCA

The threshold determination for §1404(a) is whether this civil action (with all parties) could have been brought in NDCA when it was filed. 28 U.S.C. § 1404(a) (discussing transferring a "*civil action*"). Defendants fail to meet their burden to show this basic requirement.

"If when a suit is commenced, plaintiff has a right to sue in that district . . . it is a district where the action might have been brought. If he does not have that right . . . it is not a district where it might have been brought." *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960) (superseded on other grounds) (citation and quotation marks omitted). "The idea behind § 1404(a) is that where a 'civil action' to vindicate a wrong—however brought in a court—presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after

findings, transfer the whole action to the more convenient court." *Van Dusen v. Barrack*, 376 U.S. 612, 623 (1964) (superseded on other grounds) (internal quotations omitted).

DoDots brought this case against both Apple and the Best Buy Defendants to efficiently litigate all infringement issues. This is because, in addition to Defendants' direct infringement, Apple indirectly infringes by inducing others (e.g., the Best Buy Defendants) to directly infringe by using the claimed technology. *See* ECF. No. 1 at ¶¶ 101-104, 128-139.

Notably, however, Defendants' brief focuses solely on Apple and is substantively silent on the Best Buy Defendants. *See* ECF. No. 60 ("Def. Mot.") at 4. Now that venue discovery has closed, there is no evidence that this civil action—i.e., the "whole action" which includes the Best Buy Defendants—could have been brought in NDCA when Plaintiff filed its complaint. *Van Dusen*, 376 U.S. at 623. In particular, there is no evidence that any of the Best Buy Defendants had "a regular and established place of business" in NDCA. *See* 28 U.S.C. § 1400(b). Nor is there evidence in the record that NDCA had personal jurisdiction over any of the Best Buy Defendants at that time or that they had, or have, any connection to NDCA.

Because Defendants have "not pressed any argument" that the Best Buy Defendants have regular and established places of business in NDCA, they have not met their burden and transfer should be denied.[1] *In re SK Hynix Inc.,* 2021-114, 2021 U.S. App. LEXIS 5674, at *12 (Fed. Cir. Feb. 25, 2021) (not abuse of discretion to deny transfer for lack of threshold inquiry evidence).

**B.      The private interest factors do not weigh in favor of transfer.**

Alternatively, the Court should deny Defendants' motion because NDCA is not a "clearly more convenient" forum than WDTX under the relevant private and public interest factors.

---

[1] On December 15, 2022, Best Buy filed a Motion to Sever and Stay Claims Against Best Buy. ECF No. 55. The motion should be denied. ECF No. 63. But even if the Court were to grant Best Buy's motion, Defendants' present motion should still be denied for the reasons set forth here.

1.      **The cost of attendance and convenience for willing witnesses.**

This factor *strongly* weighs *against* transfer. A majority of relevant witnesses are in Texas. *See* Ex. 1 (Witness Map). This case relates to how mobile apps are downloaded on Apple devices and how content is displayed on the apps' user interface (UI). *According to Apple*, "the accused features in this case [] relate to .ipa, info.plist, NIB, XIB and Storyboard files . . . ." *See* Ex. 2, 2/27/23 discovery dispute email.[2] Thus, as it relates to these mobile apps and features, the relevant question is "where are the relevant witnesses located?" *Monterey Rsch., LLC v. Broadcom Corp.,* No. W-21-CV-00541-ADA, 2022 U.S. Dist. LEXIS 30364, at *21 (W.D. Tex. Feb. 21, 2022).

Despite Apple having over 7,000 employees in Austin, Defendants ignored witnesses with knowledge about four of the five filetypes that Apple identified as being relevant – .plist, NIB, XIB, Storyboard files. Apple focused only on the fifth filetype (.ipa files), which have the least relevance to this litigation. The .ipa files are similar to zip files – ███████████████████ ████████████████████████. *See* Ex. 3, (Carlson Dep), 10:7-18. The app files contained within .ipa files are relevant because these app files actually function to control the design and appearance of apps as claimed in the patents-in-suit. Thus, Defendants ignore what is most relevant to infringement. Even less relevant is the aspect of .ipa files that Defendants focus *narrowly* on – the "*development* of .ipa file technology." *See* De Atley Decl., ¶¶3-7; Carlson Decl., ¶¶3-7; Ex. 3, 48:21-49:8, 53:4-11, 54:5-10. What is important for trial is how the app files function, not the .ipa files themselves or how .ipa files were developed.

Defendants' focus on the *development* of .ipa files was no accident. Defendants set up a strawman. And voilà, Defendants manufactured a scenario where there are no witnesses in Texas with knowledge of the *development* of .ipa files. Case closed . . . or so Defendants thought. But,

---

[2] Before filing their motion, Defendants were aware of all five filetypes – these were some filetypes implicated in infringement contentions. Yet, Defendants' motion only addressed .ipa files.

DoDots uncovered *at least thirteen* Apple employees *in Austin* with information relevant to the files that Apple identified as relevant – the .NIB, .XIB, .playlist and Storyboard files which actually create the features claimed in the asserted patents.[3] In addition, as discussed below, DoDots identified another *ninety-nine* Apple independent contractors *in Austin* with relevant information.[4]

Apple WDTX: As part of their jobs, Apple employees in Austin use and have knowledge of a wide array of technologies relevant to the asserted claims, including .plist, NIB, XIB and Storyboard files. For example, Chakshu Arora, an Apple software engineer in Austin, testified that ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ *See* Ex. 4 ("Arora Dep."), 6:8-21; 9:9-16; 33:1-23. She testified about the ████████████████████████████ ████████████████████████—the very files that Apple claims are relevant. *Id.*, 19:7-14, 22:15-26:17. Thus, Ms. Arora has knowledge relevant to the infringement issues in this case.

Likewise, Michael Kuntscher, an Apple engineering manager in Austin, testified that he and his team are responsible for ████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████—again, files Apple claims are relevant. *See* Ex. 5 (Kuntscher Dep.)*,* 5:15-6:11, 10:9-12:5 (████████████████); 18:15-20:11. Five of eight members of that team are also located in WDTX. Ex. 5, 7:2-23. And Mr. Kuntscher has knowledge about ██████████████████████████████, which is relevant to the asserted claims. *Id.*, 15:8-16:4; *see, e.g.,* '407 patent, claim 1 ("presentation . . . of the viewer graphical user interface");

---

[3] DoDots identified dozens of other Austin witnesses that appear to have relevant information. *See* Ex. 6, Response to Apple's Interrogatory No. 1 and Ex. 7, Kuntscher Depo Ex 2, LinkedIn profiles.
[4] Apple never briefed or identified the location of any witnesses that may have information relevant to the full scope of DoDots' infringement allegations and its motion is deficient as incomplete.

'083 patent claim 1 ("instructions . . . to request content from the network" and "generate the graphical user interface . . . with the content received").

William Chapman (residing in Deer Park, Texas) is a █████████████████████ ████████████████████████████████████████. *See* Ex. 8 (Chapman Dep.), 6:9-11, 6:15-7:8; 8:2-11; 8:20-9:24. His five-person group is located in Austin. *Id.,* 7:9-12. Notably, Mr. Chapman has knowledge relevant to direct infringement, including █████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████ *Id.*, 10:5-19; 12:7-18; 14:8-22; 16:15-25. He also has relevant knowledge concerning █████████████████████ ████████████████████. *Id.*, 18:5-16. Because he and his team have knowledge of █████████ ████████████████████████████████████████, Chapman and his team also have knowledge relevant to indirect infringement. *Id.* 7:6-18:19

<u>Apple California, Oregon, Colorado employees</u>: Whereas DoDots identified *at least thirteen* Apple employees with relevant knowledge of a wide array of filetypes (Ex. 7, 7:2-23, Ex. 8, 7:9-12), Defendants only identified witnesses with knowledge of *one* filetype – .ipa files. Even then, Defendants' declarations only identify *two* witnesses by name – Apple employees Dallas De Atley (located in NDCA) and Eric Carlson (located in Oregon) and never identify how their ".ipa file" knowledge is relevant to the asserted patents.[5] *Monterey Rsch., LLC,* 2022 U.S. Dist. LEXIS 30364, at *21 ("general allegations unsupported by specific evidence do not tip the scales").

Further, Apple's technical declarants (De Atley and Carlson) are <u>not</u> credible witnesses and they obscure their (and their team's) *limited* relevant knowledge. Their declarations discuss

---

[5] Mr. Carlson's declaration identifies ████████████████████████████████████████ ████████████ Carlson Decl. ¶5; Ex. 3, 39:16-22 (correcting his teams' current locations)

███████████████████████████████████████████████████

█████████. Mr. Carlson, for example, testified that ███████████████████

█████████. Ex. 3, 18:24-19:3; 34:8-11. With only limited general knowledge of .ipa files,

Carlson and De Atley are *not* witnesses weighing in favor of transfer, particularly when compared

against the many Apple and third-party WDTX witnesses DoDots uncovered. Further, both

Messrs. De Atley and Carlson (as Apple 30b6 witnesses regarding Apple's investigation into

relevant Texas witnesses and their identity[6]) testified extensively at their depositions about █████

█████████████████████████████████████████:

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

*See* Ex. 9 (De Atley Depo), 33:12-34:4, 47:13-48:17, 64:1-64:14; Ex. 3, 49:14-19, 50:8-21, 54:5-

10; *see also* Ex. 9, 30:12-33:11, 37:23-40:20, 42:1-47:12, 48:18-51:15, 52:19-53:16, 55:3-14,

56:8-14; Ex. 3, 50:20-53:11. As mentioned above, Apple buried its head in the sand, supporting

its transfer motion with only a few cherry-picked witnesses and hoping that DoDots would either

miss or not probe into the many relevant witnesses in Texas.

---

[6] Mr. De Atley confirmed ███████████████████████████████████
(*See* Ex. 9, 46:16-47:12; Ex. 31, DoDots First 30(b)(6) Notice; Ex. 32, DoDots Second 30(b)(6)
Notice; and Ex. 33, April 11, 2023 Email designating. Mr. De Atley.) Mr. Carlson also confirmed
this. (*See* Ex. 3, 48:15-19 and Ex. 34, March 21 2023 Email designating Mr. Carlson.)

Beside De Atley and Carlson, Defendants identify only *two* other Apple witnesses by name—Ann Thai (marketing) and Jackie Harlow (IP transactions). As it did with the technology in this case, Apple made no effort to determine whether any witnesses in Texas had relevant knowledge related to marketing and IP transactions. Ann Thai, ████████████████ ██████████████ did not describe the relevance of her testimony and only made the *generalized* statement that she ████████████████████████████████████████████████ Thai Decl, ¶ 3. Those generalized statements should not be afforded much, if any, weight in the Court's analysis. *Monterey Rsch., LLC v. Broadcom Corp.,* 2022 U.S. Dist. LEXIS 30364, at *21 ("general allegations unsupported by specific evidence do not tip the scales in a transfer analysis").

Apple also relies on the declaration of Jackie Harlow, ████████████████████ in Boulder, Colorado. Ms. Harlow does not explain how her knowledge might be relevant to this case. For example, she does not discuss her knowledge of r████████████████████████ ████████████████████. And though Ms. Harlow may (or may not) have relevant licensing knowledge, even if she does, she is located in Colorado – which is closer to Waco than to NDCA, which should weigh *against* transfer.[7] *See* Apple Mot. at 7 (conceding Colorado is closer to Waco)

At bottom, Defendants simply have not presented a complete and accurate record and, thus, cannot carry their burden. *Rockstar Consortium LP v. Google Inc*., 2014 WL 6480772, at *2 (E.D. Tex. Nov. 18, 2014) (noting "multiple instances" that "called into question the veracity and completeness of [defendant's] evidence … [defendant] has not, and cannot, meet its burden"); *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456-JRG, ECF No. 53 at 6 (E.D. Tex. May 22, 2018) (noting the problems created by "self-serving declarations"); *Pers.*

---

[7] Both Ms. Thai and Ms. Harlow reference ████████████████████████████████ ████████████████████████████ do not alter the venue analysis.

*Audio, LLC v. CBS Corp.*, 2014 U.S. Dist. LEXIS 37089, at *8-9 (E.D. Tex. Mar. 20, 2014) (denying transfer where movant "omitted highly relevant information in its briefing when that information did not support transfer"); *Abstrax, Inc. v. Hewlett-Packard Co.*, 2014 WL 5677834, at *3 (E.D. Tex. Nov. 4, 2014) ("An incomplete recitation of [the] facts may be just as misleading as an inaccurate recitation."). Defendants' strategy of hiding activities in Texas relevant to this case backfired, because it is now left with insufficient evidence to support transfer and a record that highlights the absence of a proper investigation.[8]

<u>Best Buy</u>: Best Buy[9] also fails to present a complete and accurate record. In a coordinated effort with Apple (through shared attorneys), Best Buy's 30(b)6 witness testified h███████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████. *See* Ex. 10 (Lemus Dep), 15:17-16:8. But Best Buy's witness (a store manager in San Marcos, Texas named Ricardo Lemus) testified that ████████████████████████████████████████████. *Id*. 15:6-21; 42:3-43:12. This activity involves downloading mobile apps to devices from the Apple App Store and is relevant to infringement. *See* Ex. 11 (Evidence of Best Buy Infringement.) Thus, relevant Texas witnesses from Best Buy include Mr. Lemus and other store managers or hourly employees (including Geek Squad members). Moreover, to the extent Best Buy has witnesses from its headquarters in Richfield, Minnesota, those witnesses are also closer to Waco than NDCA. All potential Best Buy witnesses are thus either located in Texas, or closer to Texas than California.

---

[8] Apple repeats the pattern that this Court has seen in many other Apple motions – offering declarants that have been selectively fed knowledge from Apple's attorneys to further Apple's debunked narrative that the Austin Campus does nothing related to its infringing products for any patent litigation in this district. *See, e.g., Togail Technologies, Ltd. vs. Apple Inc.*, 22-cv-362, ECF 62 at (W.D. Tex., April 5, 2023), *Sonrai Memory Ltd., vs. Apple Inc*., 22-cv-787, ECF 62 (W.D. Tex., April 5, 2023), and *Scramoge Tech. v. Apple Inc*., 21-cv-579. ECF 63.

[9] DoDots alleges Apple indirectly infringes when Best Buy downloads mobile apps for customers.

<u>DoDots witnesses</u>: DoDots ███████████████████████████████ *See* Ex. 12 (White Dep.) 15:8-14. David White is the only person affiliated with DoDots. *Id.*, 72:6-14. He splits his residence between Mexico and Nevada. *See* Ex. 13, White Decl., ¶ 1. Mr. White expects to travel from his home in ███████████████ Mexico for trial. *Id.*, ¶ 7. And Waco is closer to his home in Mexico than to NDCA, but he does not view Waco as being any more or less convenient than NDCA. *Id.*, ¶ 6. The two lead inventors, John and George Kembel, are willing to appear at trial and will provide relevant testimony about DoDots, Inc. and the asserted patents. *See* Ex. 18, ¶¶5-8 and Ex. 22, ¶¶5-8 The convenience of these witnesses weighs slightly against transfer.

### 2. Relative ease of access to sources of proof is neutral.

This factor is neutral. "[T]he location of physical evidence is more important . . . than the location of electronic documents…" *SVV Tech. Innovations, Inc. v. Micro-Star Int'l Co., Ltd.*, No. 6:22-cv-511, ECF No. 31 at 12 (W.D. Tex. Apr 4, 2023). "[T]he question is relative ease of access, not absolute ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013).

<u>Apple documents</u>: Apple does not identify any specific physical documents in WDTX or NDCA relevant to this case. Instead, Apple declarants make *generalized* statements regarding physical documents—Ms. Thai and Harlow generally state that ████████████████████ ████████████████████ *See* Thai Decl. ¶ 6; Harlow Decl. ¶ 7. And Messrs. De Atley and Carlson state that ██████████████████████████████████ *See* De Atley Decl. ¶ 7; Carlson Decl. ¶ 7. Apple offers no other details and, to date, has not produced any physical documents. Indeed, in response to DoDots' request for evidence of the physical location of any non-electronic documents, Apple pointed to an interrogatory response which identified *only server locations*. *See* Ex. 14, Apple's Response to RFP 6 (Ex. J) and Ex. 15, Apple's Response to Rog.1.

Moreover, Apple conceded that its document servers are ██████████████████ ██████████████████████████████. *See* Ex. 15 at 6-7. Thus, its

documents are found throughout the country. The Fifth Circuit has noted that when most evidence is electronic and equally accessible in either forum, this factor does not bear strongly on the analysis. *In re Planned Parenthood Fed'n of Am., Inc*., 52 F.4th 625, 630 (5th Cir. 2022). Mr. De Atley and Mr. Carlson testified that ███████████████████████████████████ ███████████████████████████████████ *See* Ex. 9, 21:5-21(███████████████ ███████████████████████████████); Ex. 2, 46:1-16. here is no difference in relative ease of access between Apple's Texas Campus and its Cupertino Campus.  Apple's consultants' documents are presumedly location with ████████████████.

**Inventor and prosecution documents**: Only three of nine inventors live in California. The main inventors live in Colorado and the others live in Korea, Washington, and Oregon. *See* Exs. 16-24. ███████████████████████████████████ ████████████████████ These facts weigh against transfer or are neutral.

**DoDots documents**: Mr. White, █████████████, testified that DoDots does not have any physical documents. ███████████████████████████████████ ███████████████████████████ Because DoDots ███ ████████████ there are no other documents anywhere else.

**Other documents**: Innovation Management Sciences, Mainstream Scientific, and Strategic Intellectual Solutions are previous owners of the patents-in-suit. █████████████ ███████████████████████████████████

### 3. The availability of compulsory process to secure witness attendance.

This Court has a greater ability to subpoena relevant witnesses than NDCA, so this factor *strongly* weighs *against* transfer. The majority of relevant *non-party* witnesses are in Austin. *See* Ex. 1. "[W]hen there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc., No. 2018-*

*149,* 2018 U.S. App. LEXIS 27963, at *8 n.1 (Fed. Cir. Sep. 25, 2018).

<u>WDTX</u>: ██████████████████████████████████ has *nearly* ██ *employees* working in Austin (and ████████████) with information relevant to infringement and damages. Ex. 26, ¶9. ████████████████████████████████ and are ██████████████ ████████████████████████████████████████████ *Id.*, ¶¶ 9-10. Their work involves ██████████████████████████████ ████████████████ ████████████ ████████████████████████████████████ ████████████████████████████████ ██████████████████ ██████████████ *Id.*, ¶ 10. ████████████████ ████████████████████████████████████████████ ████████████████████████████ *Id.*, ¶¶ 12-13.[10]

Disturbingly, to further obstruct DoDots' discovery, Apple apparently took steps that resulted in relevant witnesses *hiding* their affiliation with Apple. In particular, in a discovery hearing, DoDots identified contractors working with mobile apps. *See* Ex. 27, March 10, 2023 Discovery Dispute, 11:22-13:14. Shortly after, those contractors changed their LinkedIn profiles:



| Pre-Hearing | Post-Hearing |
|---|---|

---

[10] Apple refused to identify consultants in Texas or to provide a corporate witness. Exs. 35-36.

*See also* Ex. 28. Though the number of people who changed their profile is unknown, such changes obstructed DoDots' ability to ascertain the full scope of relevant Apple employees/contractors in WDTX. Apple should not be rewarded for its bad behavior.

Indeed, information about contractors is important because Mr. Kuntscher testified that ███

███████████████████████████████████████████████████████████████████████████

███████████████████ Ex. 5, 32:13-33:11. There may be many other potential witnesses working alongside Apple engineers in Texas that DoDots is not able to identify because Apple has influenced consultants to hide their work with Apple.

Inventors: Only three of nine inventors are located in California. The rest are located throughout the U.S. and in Korea. The lead inventors and founders of the original DoDots, John and George Kembel (and the only likely witnesses at trial), are located in Colorado. Defendants have not shown that any of the three California inventors have relevant information (one is only named on a single asserted patent)[11] or are unwilling to testify at trial in Waco. *See In re Planned Parenthood,* 52 F.4th at 630-31. The relevant inventors have declared that they would find attending trial in Waco no more inconvenient than attending trial in NDCA. *See* Ex. 16-24. Thus, less (or no) weight should be given to these three unlikely witnesses in California.



Prior patent owners: Rakesh Ramde and Wilfred Lam ███████████████████

███████████████████████████████████████████████████████████████████████

███████████████████ Only one of them—likely, Mr. Ramde ███████████████

███████████████████████—will be a witness at trial. Moreover, Mr. White ███████

██████████████████████████████████████████████, as discussed in the willing

---

[11] *See Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319, 1338 (Fed. Cir. 2009) ("inventor's subjective intent is irrelevant to the issue of claim construction" and "alleged infringement").

witness section, he will be traveling from his home in Mexico for trial, which is closer to Waco.

Other non-party witnesses: Any other potential non-party witnesses are spread throughout the U.S. and are not subject to the subpoena power of NDCA or WDTX. For example, ██████ ███████████████████████████████████████████████████ is in Georgia (Ex. 5, 32:13-33:19) and ████████████████████████████ Ex. 12, 51:4-9.

### 4. Other practical problems making trial easy, expeditious, inexpensive.

This factor weighs *against* transfer. The same patents are asserted in *DoDots Licensing Solutions LLC v. Samsung Elec. Co., et al.,* No. 6:22-cv-00535. If the Court denies transfer in the Samsung case, this factor weighs *against* transfer. *See Sonrai Memory Ltd. v. Apple Inc.,* No. 6:22-cv-00787-ADA, ECF No. 57 at 21 (W.D. Tex. Apr. 12, 2023) ("Two courts ruling on the same patent asserted by the same plaintiff wastes judicial resources and risks inconsistent rulings on the patents-in-suit."); *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.,* No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013) ("duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer."); *see also In re Vistaprint Ltd.,* 628 F.3d at 1346 n.3 (not abuse of discretion to deny transfer).

Apple cites *In re Google Inc.,* No. 2017-107, 2017 WL 977038, *3 (Fed. Cir. Feb. 23, 2017) and *In re NetScout Sys., Inc.,* No. 2021-173, 2021 WL 4771756, at *5 (Fed. Cir. Oct. 13, 2021) to argue that the "mere fact of co-pending litigation does not weigh against transfer." But both of those cases merely note that this factor cannot be considered dispositive. It does not mean that co-pendency cannot be considered in the balancing of factors.

### C. The public interest factors.

Court congestion: This factor is neutral. DoDots does not sell products and the Federal Circuit recently found it error "to accord this factor any weight" when the patentee "is not engaged

in product competition." *See In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023).[12]

Local interest: This factor weighs *against* transfer. Apple repeats an argument made in *Sonrai Memory v. Apple* that it primarily designed accused features in California, its headquarters are located there, and half of Apple's likely witnesses are based there. *Compare* Apple Mot. at 15 *with Sonrai Mem. Ltd. v. Apple Inc.,* 6:22-cv-787-ADA, ECF No. 57 at 23. In addition to DoDots debunking or at least casting serious doubt on the credibility and relevance of Apple's four declarants and demonstrating the falsity of Apple's claim that "no relevant witnesses" reside in Texas, the *Sonrai* Court noted that the proper focus is the connection between venue and "the events that gave rise to a suit." *Id.* As discussed above, in view of the number of Apple, Best Buy and third-party infringement witnesses present in this district, this factor weighs against transfer. Texas surely has an interest in the significant technical work being performed in its state that is relevant to the case and in DoDots, a Texas entity owning the patents-in-suit. Further, Apple's significant campus in Austin (7,000 people) negates or at least substantially diminishes relying on Apple's "headquarters" in California as a compelling fact regarding the local interest factor. Nor can connections of the inventors and the original DoDots Inc. company to California—from two decades ago—overcome the interests of Texas in the case that exist today. Accordingly, Texas' local interest weighs against transfer.

Familiarity of the forum/conflicts of law: DoDots agrees these factors are neutral.

---

[12] Had it been applicable, WDTX is faster to trial, so this factor should weigh against transfer. *See generally Sonrai v. Apple,* 6:22-cv-787-ADA, ECF No. 57 at 21-22 and fn. 1.

## IV.    Conclusion

| Factor | DoDot's Position |
|---|---|
| Cost of attendance for willing witnesses | *Strongly* weighs *against* transfer |
| The relative ease of access to sources of proof | Neutral |
| Availability of compulsory process | *Strongly* weighs *against* transfer |
| All other practical problems | Weighs *against* transfer |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest | Weighs against transfer |
| Familiarity of the forum with law/conflicts of law | Neutral |

Dated: May 5, 2023

Respectfully submitted,

*/s/ Jason S. Charkow*
Raymond W. Mort, III
Texas State Bar No. 00791308
raymort@austinlaw.com
**THE MORT LAW FIRM, PLLC**
100 Congress Ave, Suite 2000
Austin, Texas 78701
Tel/Fax: (512) 865-7950

*Of Counsel:*
Ronald M. Daignault (*pro hac vice*)*
Chandran B. Iyer (*pro hac vice*)
Scott R. Samay (*pro hac vice*)*
Jason S. Charkow (*pro hac vice*)*
Shalu Maheshwari (*pro hac vice*)*
Richard Juang (*pro hac vice*)*
Oded Burger ((*pro hac vice*)*
Zachary H. Ellis (State Bar No. 24122606)*
rdaignault@daignaultiyer.com
cbiyer@daignaultiyer.com
ssamay@daignaultiyer.com
jcharkow@daignaultiyer.com
smaheshwari@daignaultiyer.com
rjuang@daignaultiyer.com
oburger@daignaultiyer.com
zellis@daignaultiyer.com

**DAIGNAULT IYER LLP**
8618 Westwood Center Drive
Suite 150
Vienna, VA 22102

*\*Not admitted in Virginia*
**ATTORNEYS FOR PLAINTIFF**


## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of May, 2023, a true and correct copy of the foregoing document was forwarded by electronic mail to all counsel of record for Defendants.

*/s/ Jason S. Charkow*
Jason S. Charkow
