## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **DODOTS LICENSING SOLUTIONS LLC,** | § | |
| *Plaintiff* | § | **W-22-CV-00533-ADA** |
| | § | |
| -vs- | § | |
| | § | |
| **APPLE INC.,** | § | |
| *Defendant* | § | |

### ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER

Before the Court is Defendant Apple Inc.'s ("Apple") Motion to Transfer Venue to the Northern District of California.[1] ECF No. 60. Plaintiff DoDots Licensing Solutions LLC ("DoDots") opposes the motion. ECF No. 95. Apple filed a reply to further support its motion. ECF No. 99. With the Court's permission, DoDots filed a sur-reply. ECF No. 110-1. After careful consideration of the parties' briefs and the applicable law, the Court **GRANTS** Apple's motion to transfer venue to the Northern District of California.

### I.    FACTUAL BACKGROUND

In its complaint, DoDots claims Apple infringes of U.S. Patent Nos. 9,369,545 ("'545 patent"), 8,020,083 ("'083 patent"), and 8,510,407 ("'407 patent") (collectively, the "asserted patents"), which are directed to a method and system for accessing and displaying content to a user. ECF No. 32 ¶¶ 11, 42, 45, 48. DoDots, the owner of the asserted patents, is a limited liability company organized under the laws of Texas. *Id.* ¶ 1. DoDots' principal place of business is in

---

[1] The Court notes that Apple filed this motion with its former co-defendants, Best Buy Stores, L.P., BestBuy.com, LLC, and Best Buy Texas.com, LLC. ECF No. 60 at 1. Because the Court has severed and stayed the claims against Best Buy Stores, L.P., BestBuy.com, LLC, and Best Buy Texas.com, LLC (ECF No. 124), the Court only considers whether the claims against Apple Inc. should be transferred in this Order.

Dana Point, California. *Id.* ¶ 1. Apple is a corporation organized under the laws of the state of California. *Id.* ¶ 2. Apple is registered to do business in the state of Texas. *Id.* According to DoDots, Apple sells products that infringe the asserted patents, including mobile phones (e.g., Apple iPhone, iPhone 6, iPhone 6S, iPhone 6 Plus, iPhone 6S Plus, iPhone SE, iPhone 7, iPhone 7 Plus, iPhone 8, iPhone 8 Plus, iPhone X, iPhone XR, iPhone XS, iPhone XS Max, iPhone 11, iPhone 11 Pro, iPhone 11 Pro Max, iPhone 12, iPhone 12 Mini, iPhone), tablet computers (e.g., iPad Air, iPad mini, and iPad Pro Tablets), smartwatches (e.g., Apple Watch (First through Seventh Generations)), and iOS enabled mobile devices (e.g., iPod Touches). *Id.* ¶ 55. The Court will refer to these products as the "accused products."

Along with its claims against Apple, DoDots also filed claims against Best Buy Stores, L.P., BestBuy.com, LLC, and Best Buy Texas.com (collectively, the "Best Buy Defendants") in this case. The Court severed and stayed DoDots' claims against the Best Buy Defendants under the customer-suit exception. ECF No. 124. Along with this case, DoDots also filed an action against Samsung, Best Buy Stores, L.P., BestBuy.com, LLC, and Best Buy Texas.com. *DoDots Licensing Solutions LLC v. Samsung Elecs.Co., Ltd. et al.*, No. 6:22-cv-535-ADA (W.D. Tex. May 24, 2022), ECF No. 1 [hereinafter "Samsung Litigation"]. The Court also severed and stayed the claims against the Best Buy Defendants in the Samsung Litigation. *DoDots Licensing Solutions LLC v. Samsung Elecs.Co., Ltd. et al.*, No. 6:22-cv-535-ADA (W.D. Tex. July 20, 2023), ECF No. 93.

After responding to DoDots' complaint, Apple filed this motion to transfer. ECF No. 60. Apple does not argue that the Western District of Texas ("WDTX") is an improper venue for this case; instead, it argues that the Northern District of California ("NDCA") is a more convenient forum, pointing to the location of potential witnesses and the relevant records in California. *Id*. at

1. DoDots contends that this case should remain in the WDTX, pointing to, among other factors, Apple's witnesses and evidence in Texas, the presence of relevant third parties in this state, and the local interest in this District. ECF No. 95 at 1−2.

## II.    LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit—here, the Fifth Circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides in part that "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought . . . " *Id.* "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under § 1404(a) is whether a civil action "'might have been brought' in the destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) [hereinafter *Volkswagen II*]. If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (footnote omitted). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *Volkswagen I*] (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the

familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The moving party has the burden to prove that a case should be transferred for convenience. *Volkswagen II*, 545 F.3d at 314. The burden is not simply that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 314–15. While "clearly more convenient" is not the same as the "clear and convincing" standard, the moving party must still show more than a mere preponderance. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show an individual factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

### III.    DISCUSSION

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the NDCA. Apple argues that the threshold determination is met because Apple is headquartered in Cupertino, California within the NDCA. ECF No. 60 at 6. DoDots argues that the threshold is not met because DoDots brought this action against Apple and the Best Buy Defendants and Apple has failed to show that venue is proper in the NDCA for the Best Buy Defendants. ECF No. 95 at 2−3. In its reply, Apple argues that the Best Buy Defendants should not be a party to this suit. ECF No. 99 at 1.

Because the Court has severed and stayed the claims against the Best Buy Defendants, the Court only considers here whether transfer is appropriate for DoDots' claims against Apple. Because Apple has shown that venue is proper for the claims against Apple, the Court determines

that the threshold determination is met. Because the threshold determination is met, the Court now analyzes the private and public interest factors to determine whether the NDCA is a clearly more convenient forum than the WDTX.

## A.  The Private Interest Factors

### i.    *The Cost of Attendance and Convenience for Willing Witnesses*

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). According to Fifth Circuit law, if the distance between a current venue and a proposed venue is more than 100 miles, the inconvenience to witnesses increases in direct relationship to the additional distance they must travel if the matter is transferred. *Volkswagen II*, 545 F.3d at 317. But it is unclear when the 100-mile rule applies, as the Federal Circuit has stated that courts should not apply the rule "rigidly" in cases where witnesses would be required to travel a significant distance no matter what venue they testify in. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). According to the Federal Circuit, time is a more important metric than distance. *Id.* However, the Federal Circuit has also held that when willing witnesses will have to travel a significant distance to either forum, the slight inconvenience of one forum in comparison to the other should not weigh heavily on the outcome of this factor. *In re Apple*, 979 F.3d at 1342. When analyzing this factor, the Court should consider all potential witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).

According to Apple, the relevant witnesses from Apple are located in California, Oregon, and Colorado. ECF No. 60 at 1. According to DoDots, Apple also has relevant employees in

Austin. ECF No. 95 at 5. DoDots has also identified one person affiliated with its company. *Id.* at 10. Each group of witnesses will be discussed below.

      1.  <u>Apple's Employees in the NDCA</u>

According to Apple, two of its witnesses, Dallas De Atley and Ann Thai, are based in the NDCA. ECF No. 60 at 7. Mr. De Atley, who "is based in Sunnyvale, California," is a Senior Software Engineer at Apple. ECF No. 60-2 ¶¶ 2−3. Mr. De Atley "was involved in the ████████ of the development of .ipa files." *Id.* ¶ 3. Mr. De Atley "manages the engineering team responsible for the .ipa file technology until around 2014." *Id.* Mr. De Atley claims that all of the work relating to .ipa technology from 2007 until 2014 took place in Cupertino, California. *Id.* ¶ 5. A few members of the current team responsible for the .ipa technology are located in Cupertino, California, but these members are not identified by name. ECF No. 60-3 ¶ 5. Ms. Thai, whose "workplace is located in Cupertino, California," is a Director of Worldwide Product Marketing at Apple. ECF No. 60-1 ¶ 2. In her position, Ms. Thai is responsible for "managing and coming up with marketing strategies ███████████████████████, from a product and business perspective. *Id.* ¶ 3.

In response, DoDots argues Mr. De Atley is not a credible witness because he obscures his team's limited relevant knowledge. ECF No. 95 at 6. DoDots complains that Mr. De Atley has only knowledge of the .ipa file type, and not the other file types that Apple identified as relevant. *Id.* at 7; ECF No. 95-2. DoDots complains that Ms. Thai did not explain the relevance of her testimony to this case. ECF No. 95 at 8.

In its reply, Apple argues that the .ipa file type is central to DoDots' infringement contentions. ECF No. 99 at 2. Apple argues that Mr. De Atley is knowledgeable of ".ipa file technology," not only .ipa files. *Id.* Apple claims that "'.ipa file technology' is an umbrella term

that includes all of the filetypes at issue." *Id.* Apple also argues that Ms. Thai has explained the relevant knowledge she possesses. *Id.* at 3.

The Court concludes that Mr. De Atley likely possesses relevant knowledge to this case and may testify at trial. Mr. De Atley is knowledgeable of .ipa file technology, which both parties agree are relevant. Mr. De Atley's presence in the NDCA[2] weighs in favor of transfer. As for Ms. Thai, the Court concludes that she also likely possesses relevant knowledge to this case. Ms. Thai is the Director of Worldwide Product Marketing for the Apple App Store. ECF No. 60-1 ¶ 2. DoDots' infringement claims relate to downloading applications from the Apple App Store. ECF No. 1 ¶ 53. Thus, Ms. Thai likely possesses knowledge relevant to damages in this case. The Court concludes that her presence in the NDCA[3] weighs in favor of transfer.

### 2. Apple's Employees in Texas

DoDots complains that in Apple's transfer motion, Apple ignores the other file types that it has identified as relevant—███████████████████████████. ECF No. 95 at 4; ECF No. 95-2. DoDots argues that Apple focuses only on .ipa files, which have the least relevance to this litigation because the other file types "actually function to control the design and appearance of apps as claimed in the patents-in-suit." ECF No. 95 at 4. DoDots claims that it has identified thirteen Apple employees in Austin that possess relevant information. *Id.* at 5. DoDots identifies the following Apple employees: (1) Chakshu Arora, an Apple software engineer in Austin who "testified that she works on coding and developing ███████ iOS apps that are downloaded to Apple devices"; (2) Michael Kuntscher, an Apple engineering manager in Austin, who testified

---

[2] The Court notes that Mr. De Atley's declaration only states that he is "based in Sunnyvale, California." ECF No. 60-2. But the Court here assumes that Mr. De Atley resides in or near the NDCA because there is no evidence to the contrary.

[3] Like Mr. De Atley, the Court notes that Ms. Thai's declaration only states that her "workplace is located in Cupertino, California." ECF No. 60-1 ¶ 2. But the Court here assumes that Ms. Thai resides in or near the NDCA because there is no evidence to the contrary.

that "he and his team are responsible for developing Apple's ████████" and he works on coding the interface using ████████ and other interface files, like ████; and (3) William Chapman, a curriculum developer for Apple, who writes tutorials to teach app developers how to build iOS apps. *Id.* at 5−6. Five members of Mr. Kuntscher's team and five members of Mr. Chapman's team are based in the WDTX. *Id.*

In its reply, Apple argues that DoDots "fails to distinguish between individuals who used the accused technology and individuals knowledgeable about how that technology works." ECF No. 99 at 1. Apple argues that the Apple employees are those with knowledge of the development of .ipa technology. *Id.* at 2. Apple argues that Mr. Kuntscher, Mr. Chapman, Ms. Arora, and their teams have knowledge of .ipa files only because they have worked on creating training materials and developing iOS apps. *Id.* Apple argues that these individuals do not know the structure, function, and operation of .ipa file technology. *Id.* Apple cites portions of Mr. Kuntscher, Mr. Chapman, and Ms. Arora's depositions suggesting that they are not knowledgeable of the structure, function, and operation of .ipa file technology. *Id.*; ECF No. 99-5 at 21:2-14 (deposition testimony from Mr. Kuntscher acknowledging that his team does not have any involvement in the installation of the ████ App); ECF No. 99-6 at 22:2-7 (deposition testimony from Mr. Chapman explaining that he knows how to create an iOS app); ECF No. 99-4 at 8:6-19 (deposition testimony from Ms. Arora explaining that she does not understand how apps are ████████████ on Apple devices).

The Court concludes that Mr. Kuntscher, Ms. Arora, and members Mr. Kuntscher's team have relevance to this case, but their knowledge is limited. DoDots' infringement allegations suggest that the focus in this case is on the function of Apple's applications more generally, not the appearance of specific applications. For example, DoDots alleges that Apple infringes claim 1

of the '545 patent "because it implements, operates and uses its Accused Apple Software, which executes specific code to obtain, display and use its Accused Apple Apps, on its Accused Apple Devices, which are in operative communication with a server over a network and include electronic storage, a display, and one or more processors configured to execute one or more computer program modules." ECF No. 32 ¶ 62. The '083 and '407 patents also focus on how an application operates on a device. *Id.* ¶ 81 (providing claim 1 of the '083 patent, which describes a device receiving information from a network location and displaying it within a graphical user interface); *id.* ¶ 93 (providing claim 1 of the '407 patent, which describes how information from a network is received to be displayed within a frame on a device). Mr. Kuntscher and his team work only on the ███████ app. ECF No. 95 at 5. Mr. Arora works on apps that are used in ███████ ███. *Id.* While the Court acknowledges that portions of the asserted claims reference the appearance of the graphical user interface for a user, the Court finds that it is less likely that these specific Apple employees identified by DoDots will testify at trial about the appearance of the specific applications that they work on. The Court weighs their presence in Austin only slightly against transfer.

Similarly, the Court concludes that it is unlikely that Mr. Chapman or members of his team will testify at trial. Mr. Chapman and his team prepare tutorials on how to build iOS apps, and he does not appear to be knowledgeable about the operation of applications on Apple devices. ECF No. 99-6 at 22:2-7 (deposition testimony from Mr. Chapman explaining that he knows how to create an iOS app). Thus, the Court does not weigh the presence of Mr. Chapman and his team in the WDTX heavily against transfer.

### 3.   Apple's Employees Elsewhere

Apple identifies two potential witnesses elsewhere: (1) Eric Carlson, Senior Software Engineer of App Installation Technologies, who is in Beaverton, Oregon, and (2) Jackie Harlow, Principal Counsel and Senior Manager of IP Transactions, who is based in Boulder, Colorado. ECF No. 60 at 4. Apple argues that Mr. Carlson possesses relevant knowledge of .ipa file technology. *Id.* Four members of Mr. Carlson's team also reside in Oregon. ECF No. 60-3 ¶ 5. Apple claims that Ms. Harlow possess relevant knowledge of Apple's patent licenses and patent transaction activities. *Id.* Apple claims that the NDCA would be a more convenient forum for both Mr. Carlson and Ms. Harlow. *Id.* at 7.

In response, DoDots argues that Mr. Carlson is only knowledgeable of the .ipa file type. ECF No. 95 at 6. Further, DoDots argues that Mr. Carlson admitted in a deposition that he does not regularly work with ███████████████████ files. *Id.* at 7. As for Ms. Harlow, DoDots argues that she does not explain how her knowledge might be relevant to this case. *Id.* at 8. DoDots complains that Ms. Harlow does not discuss whether she knows about comparable licenses or any of the accused features. *Id.* But DoDots argues that Ms. Harlow's presence in Colorado weighs against transfer because Colorado is closer to Waco than it is to the NDCA. *Id.*

The Court concludes that Mr. Carlson's presence in Oregon weighs in favor of transfer. Mr. Carlson likely possesses knowledge relevant to this case. Mr. Carlson is knowledgeable regarding .ipa file technology. ECF No. 60-3 ¶ 3. While DoDots argues that Mr. Carlson's knowledge is limited, the Court disagrees. While Mr. Carlson does not develop apps, he is knowledgeable regarding ███████████████████████. ECF No. 95-3 at 36:1-4. Mr. Carlson's team develops the ████████, which "████████████████████ ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ "

*Id.* at 27:2-11. Mr. Carlson's knowledge appears to be relevant to DoDots' infringement allegations. Mr. Carlson is in Oregon, which is significantly closer to the NDCA than the WDTX. Mr. Carlson would likely face less cost and inconvenience if he were to testify in the NDCA than in the WDTX.

The Court does not weigh Ms. Harlow's presence in Colorado in favor or against transfer. If Ms. Harlow is called to testify at trial, she will find neither the NDCA nor the WDTX a convenient forum. *In re Apple*, 979 F.3d at 1342; *see also* ECF Nos. 61-6, 61-7 (showing that to travel from Boulder, Colorado to San Francisco, California or Waco, Texas would require at least 13 hours driving or around three hours flying). For that reason, Ms. Harlow's presence in Colorado does not weigh on the outcome of this factor.

### 4. DoDots' Party Witnesses

DoDots claims that ███████████████████████████. ECF No. 95 at 10. DoDots claims that ██████████████████████████████████. *Id.* DoDots claims that ████████ splits his time between residences in Nevada and Mexico. *Id.* DoDots contends that ████████ expects to travel from his home in San Jose Del Cabo, Mexico for trial. *Id.* DoDots notes that ████████ does not view Waco as more or less convenient than the NDCA. *Id.* DoDots claims that inventors John and George Kembel are also willing to testify at trial. *Id.*

The Court concludes that none of DoDots' witnesses bear on the outcome of this factor. As ████████ states in his declaration, neither forum is more convenient for him. ECF No. 95-13 ¶ 7. Further, inventors John and George Kembel have not clarified that they are willing to testify at trial in either forum. ECF No. 95-18 ¶ 8 (George Kembel's declaration stating that he is willing to travel to Texas to testify); ECF No. 95-22 ¶ 8 (John Kembel's declarations stating that he is

willing to travel to Texas to testify). In any event, John and George Kembel are in Colorado, and they likely would not find either forum more convenient.

     5.   <u>Conclusion</u>

The Court finds this factor is weighs in favor of transfer. While Apple has only identified a few relevant witnesses in or near the NDCA, DoDots has not identified any witnesses in this District that the Court finds are likely to testify at trial.

    ***ii.***    ***The Relative Ease of Access to Sources of Proof***

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d at 1340 (citing *In re Genentech*, 566 F.3d at 1345).

According to Apple, this factor weighs in favor of transfer because Apple's relevant sources of proof are primarily in the NDCA. ECF No. 60 at 10. One of Apple's declarants, Mr. De Atley, states that "[a]ll physical records and documents that [he] ha[s], if any, related to .ipa file technology are located in California" and "[a]ny electronic records [he] may have on [his] computer are located in California." ECF No. 60-2 ¶ 7. Another of Apple's declarant's Ms. Thai, states that "[t]he Product Marketing team for the ▮▮▮▮▮▮ (including [her]) have physical records and things located in [their] primary workplaces located in the Bay Area of California, including electronic records." ECF No. 60-1 ¶ 6. Apple argues that all other evidence is located in Oregon and Colorado. ECF No. 60 at 10. Apple's declarant, Mr. Carlson, states that "[a]ll physical records

and documents that [he] ha[s], if any, related to .ipa file technology, are located in California or Oregon and "[a]ny electronic records [he] may have on [his] computer are located in Oregon." ECF No. 60-3 ¶ 7. Another of Apple's declarants, Ms. Harlow, states that "[t]he IP Transactions team (including [her]) have physical records and things located in [their] primary workplaces located in the Bay Area of California and in Boulder, Colorado, including electronic records." ECF No. 60-4 ¶ 6. Apple claims that any Apple documents located in this District are not relevant to the claims and defenses in this case. ECF No. 60 at 10. Apple also argues that Mainstream Scientific LLC, the original applicant of the '545 patent and the original assignee of the '083 and '047 patents, likely has relevant information in the NDCA. *Id.* at 11. Apple also argues that because DoDots was founded in Silicon Valley and has a place of business in Dana Point, California, some sources of proof from DoDots are likely located in California. *Id.*

In response, DoDots complains that Apple does not identify any specific physical documents in the WDTX. ECF No. 95 at 10. DoDots argues that Apple's evidence is electronic and could be accessible from either forum. *Id.* at 11. As for DoDots' evidence, DoDots argues that all prosecution documents are physically located in ████████████ Texas. *Id.* DoDots claims that ████████████ has testified that DoDots does not have any physical documents. *Id.* All of DoDots' documents are stored electronically ████████████. *Id.* DoDots claims that evidence from previous owners of the asserted patents, including Innovation Management Sciences, Mainstream Scientific, and Strategic Intellectual Solutions, was ████████ ████████████. *Id.*

The Court acknowledges that the Fifth Circuit's decision in *In re Planned Parenthood* indicates a shift in the analysis of this factor. The Fifth Circuit has recently agreed with a district court that concluded that this factor is neutral because electronic evidence is equally accessible in

either forum. *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022). The Fifth Circuit held that "[t]he location of evidence bears much more strongly on the transfer analysis when . . . the evidence is physical in nature." *Id.* But the Federal Circuit has held that it is an error to conclude this factor is neutral because electronic documents are easily accessible in both forums. *In re Apple, Inc.*, No., 2022 WL 1196768, at *4 (Fed. Cir. Apr. 22, 2022). To the extent that these two holdings can be reconciled, the Court concludes that the location of physical evidence is more important to this analysis than the location of where electronic documents are typically accessed. However, the Court still considers the location of document custodians of electronic documents in its analysis of this factor. *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021).

Here, neither party has shown that physical evidence is present in the WDTX or the NDCA. While two of Apple's declarants state that Apple has physical evidence in California and Colorado, Apple has failed to describe this physical evidence with any specificity. The Court cannot determine whether any of this physical evidence is likely to be needed at trial. Thus, the Court finds that any physical evidence does not weigh in the analysis of this factor.

Turning to the electronic evidence, the Court concludes that more of Apple's relevant document custodians are likely based in or close to the NDCA than in or near the WDTX. As discussed above, Mr. De Atley, Ms. Thai, and Mr. Carlson likely possess relevant knowledge. The Court concludes it is likely that these employees are custodians of the relevant electronic documents. *See In re Google LLC*, 2021 WL 5292267, *2 (holding that it is an error to not "also consider[] the location of document custodians and the location where documents are created and maintained, which may bear on the ease of retrieval"). As discussed in their declarations, Mr. De Atley, Ms. Thai, and Mr. Carlson maintain electronic records in their workplaces in California and

Oregon. ECF No. 60-1 ¶ 6; ECF No. 60-2 ¶ 7; ECF No. 60-3 ¶ 7. Members of Ms. Harlow's team also maintain relevant documents in California. ECF No. 60-4 ¶ 6. Further, Mr. De Atley, Ms. Thai, Mr. Carlson, and Ms. Harlow state in their declarations that the relevant documents to this case can be accessed only by Apple employees with the appropriate credentials. ECF No. 60-1 ¶ 6; ECF No. 60-2 ¶ 7; ECF No. 60-3 ¶ 7; ECF No. 60-4 ¶ 6.

While DoDots argues that the relevant prosecution evidence is located in this District, DoDots' interrogatory response merely states that ████████████████████████████ ███████████████████████████████████ ECF No. 95-6 at 13. As for DoDots' other evidence, the Court finds that it does not impact the outcome of this factor. ████████████ ███████████ possesses all of DoDots' electronic evidence ██████████ . ECF No. 95 at 11. DoDots also claims that evidence from Innovation Management Sciences, Mainstream Scientific, and Strategic Intellectual Solutions has ███████████████████ . *Id.*

Accordingly, the Court finds that this factor favors transfer.

### iii.   *The Availability of Compulsory Process to Secure the Attendance of Witnesses*

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, 2019 WL 4743678, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (citing *In re Genentech*, 566 F.3d at 1345). The Federal Circuit has held that "when there is no indication that a non-party witness is willing,

the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, 2018 WL 4692486, at *3 n.1. However, the Fifth Circuit has clarified that "the availability of the compulsory process 'receives less weight when it has not been alleged or shown that any witness would be unwilling to testify.'" *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th at 630−31 (quoting *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488 (6th Cir. 2016)).

Apple argues that this factor favors transfer because at least some of the inventors of the asserted patents resides in the NDCA. ECF No. 60 at 12. Apple notes that, at the time of application, all of the inventors resided in the NDCA. *Id.* Apple argues that three inventors, John Russell, Joseph Bella, and Sridhar Devulkar, reside in the NDCA today. *Id.*; ECF Nos. 61-14, 61-15, 61-16, 61-19. Apple claims that another inventor, Mark Wallin, resides in Orange County, California. ECF No. 60 at 12; ECF No. 61-21. Apple notes that no inventor resides in the WDTX. ECF No. 60 at 12. Apple also argues that this factor favors transfer because the original assignee of the asserted patents, Mainstream Scientific LLC, is located within the NDCA. *Id.*

In response, DoDots argues that this factor weighs against transfer because the majority of relevant non-party witnesses are in Austin. ECF No. 95 at 11. DoDots argues that Apple's vendor, ███████████████████████, has almost 100 employees in Austin that work on the accused products. *Id.* at 12; ECF No. 95-26 ¶ 6. A declaration from Rishabh Arora, a Software Application Developer at ████, states that ████'s identified employees are "involved with the design/development of mobile apps, including how content is displayed and appears to a user." ECF No. 95-26 ¶ 11. The declaration adds that at least some of the identified employees "use, or have knowledge of, or work with, one or more of the following file types: ██████████████ ████████." *Id.* DoDots notes that the declaration specifically states that Rakesh Varma Nadakudhiti and Rishabh Arora work for ████ as an ████ app developer. ECF No. 95 at 13; ECF

16

No. 95-26 ¶¶ 12−13. Rakesh Varma Nadakudhiti works with ████. ECF No. 95-26 ¶ 12. Rishabh Arora works with ██████████████████. *Id.* ¶ 13. DoDots also complains that Apple intentionally obstructed discovery by trying to hide ███ employees' affiliation with Apple. ECF No. 95 at 12−13. As for the inventors, DoDots argues that the lead inventors, John and George Kembel[4], are in Colorado, outside the subpoena power of the NDCA and the WDTX. *Id.* at 13. DoDots argues that John and George Kembel are the only inventors likely to testify at trial. *Id.* DoDots argues that Apple has failed to show that the three inventors in the NDCA have relevant information or are unwilling to testify at trial. *Id.* DoDots also notes that one of the three inventors in the NDCA is only named on one of the asserted patents. *Id.* As for the prior patent owners, Mainstream Scientific LLC and IM Sciences, DoDots argues that ████ ██████████████████████████████████. *Id.* DoDots argues that ████ ████ is likely to be a witness at trial. *Id.* ████ ████'s declaration suggests that he is located in Los Altos, California. ECF No. 90-30. ████ ████'s declaration suggests that he is located in Santa Clara County, California. ECF No. 90-29. DoDots claims that all other relevant third-party witnesses are not located within the subpoena power of either district. ECF No. 95 at 14.

In its reply, Apple argues that along with the three inventors within the subpoena power of the NDCA, DoDots has also identified ████ ████ and ████ ████ who also reside within the subpoena power of the NDCA. ECF No. 99 at 4. Apple argues that both ████ ████ and ████ ████ possess knowledge relevant to standing and damages. *Id.* Apple also argues that ████ employees are not potential witnesses in this case. *Id.* at 5. Apple notes that some of identified

---

[4] DoDots provides declarations from John and George Kembel that suggest that they are willing to testify at trial in Waco. ECF No. 95-18 ¶ 8; ECF No. 95-22 ¶ 8. John and George Kembel reside outside the subpoena power of both districts, so they cannot be compelled to testify at trial in either district. As discussed above, if considered under the willing witness factor, they likely would not find either forum more convenient. Thus, they would not impact the outcome of that factor.

ninety-nine ███ employees do not reside in the WDTX. *Id.* Apple argues that "[t]he ████

████ do not work on any accused apps, nor do they have knowledge of the structure,

function, and operation of the .ipa file technology as a result of their work for Apple." *Id.* One of

Apple's declarants, Sabitha DSouza, claims that she works with █████████ for the

development of the app used by ███████████. ECF No. 99-1 ¶ 4. Ms. DSouza

claims that this app is strictly for ██████████. *Id.* ¶ 5. Ms. DSouza states that

she has worked with Mr. Nadakudhiti on this app. *Id.* ¶¶ 6–7. Another Apple declarant, Neeraj

Gupta, claims that his team works with ███████ to develop ████████████.

ECF No. 99-2 ¶ 4. Mr. Gupta claims that Mr. Arora is one of the █████████ who works with

his team. *Id.* ¶ 6.

In its sur-reply, DoDots argues that Apple has improperly limited the relevant witnesses to

those with knowledge of mobile apps available to consumers through the Apple App Store. ECF

No. 110-1 at 1. DoDots argues that this case is not so limited. *Id.* As for ████, DoDots argues that

the declarations from Ms. DSouza and Mr. Gupta are unreliable because they were not provided

during venue discovery and DoDots has not had the opportunity to depose these declarants. *Id.* at

2. DoDots also argues that the declarations from Ms. DSouza and Mr. Gupta only reflect the

limited personal knowledge of the declarants. *Id.* DoDots notes that the declarants do not describe

what all of the ███ employees have worked on over the course of ███'s ███-year relationship

with Apple. *Id.* DoDots notes that Ms. DSouza and Mr. Gupta only explain that none of the work

that their teams assign ██████ involves work on consumer apps. *Id.* DoDots argues that

other Apple teams may assign █████████ work on consumer apps. *Id.* at 3, DoDots also notes

that Ms. DSouza and Mr. Gupta do not state that ████████ lack relevant knowledge. *Id.* at

3.

For the inventors within the subpoena power of the NDCA, the Court finds that their presence in California weighs at least slightly in favor of transfer. The Court acknowledges that John and George Kembel are the first inventors listed on each of the asserted patents and DoDots claims that they are the "lead" inventors. ECF Nos. 1-6, 1-7, 1-8; ECF No. 95 at 13. According to DoDots, they are also the founders of the original DoDots, and the most likely to testify at trial. ECF No. 95 at 13. Based on this information, the Court concludes that it is more likely that John and George Kembel will be the only inventors to testify at trial. But to the extent that additional inventors may be necessary, the Court finds that the presence of inventors Messrs. Russell, Bella, and Devulkar within the subpoena power of the NDCA weighs at least slightly in favor of transfer.

For Messrs. █████ and ████, the Court concludes that the presence of these two individuals within the NDCA weighs in favor of transfer. DoDots has stated that Mr. █████ "will be a witness at trial." *Id.* at 13. Mr. █████ possesses "knowledge related to the prosecution of the [asserted] patents and efforts to license the DoDots patent portfolio to the defendants." ECF No. 95-30 ¶ 5. DoDots also has noted that Mr. █████ was ████████████████████████████ █████████. ECF No. 95 at 13. Mr. █████ states in his declaration that he has "knowledge related to the prosecution of the [asserted] patents and efforts to license the DoDots patent portfolio to the defendants." ECF No. 95-29 ¶ 4. The Court concludes that Messrs. █████ and ████ possess relevant knowledge that may be needed at trial. Because Messrs. █████ and ████ likely reside within the subpoena power of the NDCA, the Court concludes that their presence in California weighs in favor of transfer.

As for █████, the Court concludes that Apple's declarations do not show that █████ employees based in the WDTX do not have relevant knowledge of the accused products. Apple's declarations from Ms. DSouza and Mr. Gupta merely explain that █████ employees have helped develop apps

██████████. ECF No. 99-1 ¶ 4; ECF No. 99-2 ¶ 4. As DoDots explains in its sur-reply, ███ employees' knowledge of ████ apps is still relevant to Apple's infringement of the asserted patents. Further, the declarations from Ms. DSouza and Mr. Gupta do not foreclose on the possibility that ███ employees may also work on the accused technology for █████ apps. In fact, the declaration from ███'s Mr. Arora states that "Mr. Nadakudhiti has worked on mobile apps published to the Apple App Store." ECF No. 95-26 ¶ 12. Mr. Arora's declaration also confirms that at least some of the ████ employees that work with Apple are knowledgeable of the ████████████████████, which were identified by Apple as the relevant files for the accused technology. *Id.* ¶ 11; ECF No. 95; ECF No. 95-2. According to ████ declarant, Mr. Arora, all of the identified ████ employees reside in Austin, Texas. ECF No. 95-26 ¶ 9. Based on the information provided, the Court concludes that there are ████ employees in this District that likely possess relevant knowledge of the ████████████████████████ which relate to the accused technology in this case. The presence of these ████ employees in the WDTX weighs against transfer.

Accordingly, the Court finds that this factor weighs slightly in favor of transfer. As DoDots has explained, there is at least one third-party witness within the subpoena power of the NDCA who is likely to testify—Mr. ████. There are additional third-party witnesses in both districts. The Court notes that neither party has alleged or shown that *any* of these witnesses are unwilling. ECF No. 31 at 10−11; ECF No. 63 at 10−12. Thus, under the Fifth Circuit's recent guidance, even though this factor slightly favors transfer, the weight of this factor is diminished. *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th at 630−31.

**iv.**   ***All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive***

When considering the private interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation before the trial court involving the same patent-in-suit, and pertaining to the same underlying technology and accusing similar services, [the Federal Circuit] cannot say the trial court clearly [abuses] its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 n.3 (Fed. Cir. 2010).

Apple argues that this factor is neutral or slightly favors transfer because this case is in its infancy. ECF No. 60 at 13. Apple asserts that the co-pending litigation in this District does not weigh against transfer. *Id.* In response, DoDots argues that this factor weighs against transfer because there is another case involving the same asserted patents pending in this Court: *DoDots Licensing Solutions LLC v. Samsung Elecs.Co., Ltd. et al.*, No. 6:22-cv-535-ADA (W.D. Tex.). ECF No. 95 at 14.

The Court rejects Apple's argument that this factor is neutral or favors transfer because this case is in its early stages. The relevant inquiry under this factor is whether the circumstances in either the forum would make trial of the matter easier, more expeditious, or less expensive. *Volkswagen II*, 545 F.3d at 314. Even if this case is in its early stages, transferring this matter to the NDCA does not reduce the practical problems before a court in that district. Apple has cited no authority for the proposition that this factor weighs in favor of transfer solely because the case is in its early stages.

The Court finds that this factor weighs at least slightly against transfer because of the co-pending Samsung Litigation. While the Court acknowledges that there is a pending Motion to Transfer Venue to the NDCA in the Samsung Litigation, judicial efficiency will be improved if both cases remain in the same district. The Court also notes that the claims pending against the Best Buy Defendants, which were severed and stayed from this case and the Samsung Litigation, remain pending in this Court.[5] Because related co-pending litigation is pending in this Division, the Court finds that this factor weighs against transfer.

Accordingly, the Court finds this factor weighs at least slightly against transfer.

## B.  The Public Interest Factors

### i.   *Administrative Difficulties Flowing from Court Congestion*

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 Fed. App'x 929, 932 (Fed. Cir. 2020). It considers the "[t]he speed with which a case can come to trial and be resolved." *In re Genentech, Inc.*, 566 F.3d at 1347. In this analysis, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.*

Apple argues that this factor is neutral or slightly favors transfer because while this Court reaches trial more quickly on average, judges in the NDCA have fewer cases per judge than in this Division. ECF No. 60 at 15. In response, DoDots argues that this factor is neutral under the Federal Circuit's recent decision in *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023). ECF No. 95 at 14−15. In *In re Google*, the Federal Circuit concluded that this factor should not weigh against

---

[5] While the Best Buy Defendants joined in this Motion and in the Motion to Transfer Venue in the Samsung Litigation, the Court notes that the Motions to Transfer Venue in both cases did not address whether venue is proper in the NDCA against the Best Buy Defendants. ECF No. 60 at 6; *DoDots Licensing Solutions LLC v. Samsung Elecs. Co., Ltd. et al.*, No. 6:22-cv-535-ADA (W.D. Tex. Jan. 1, 2023), ECF No. 58 at 8.

transfer when the plaintiff "is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution." 58 F.4th at 1383. Here, DoDots admits that it "does not sell products." ECF No. 95 at 14.

Under the Federal Circuit's current guidance, the Court concludes that this factor is neutral because DoDots is not engaged in product competition in the marketplace.

### ii.  *Local Interest in Having Localized Interests Decided at Home*

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent cases "are not a fiction." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-CV-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (emphasis in original) (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)). Courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *Id.* at 1319.

Apple argues that the NDCA has a strong connection to this case because Apple's work on the design and development of the accused software took place in that district. ECF No. 60 at 15. Apple also argues that DoDots, Mainstream Scientific LLC, and the named inventors all have connections to the NDCA. *Id.* Apple argues that there is no connection between this case and this District. *Id.* DoDots argues that this factor weighs against transfer because there are many Apple and third-party witnesses in this District. ECF No. 95 at 15. DoDots also argues that Texas has an interest in the patent rights of a Texas entity, DoDots. *Id.* DoDots further claims that the inventors 'and DoDots' connection to the NDCA is from two decades ago. *Id.*

The Court finds that this factor at least slightly favors transfer because the development the accused products appears to have primarily taken place in the NDCA. Apple's declarant, Mr. De Atley, states that the development of .ipa file technology took place in Cupertino, California. ECF No. 60-2 ¶ 5. Further, at least some of the marketing of the accused technology also appears to take place in the NDCA. ECF No. 60-1 ¶ 4. Additionally, three of the inventors of the asserted patents are located in the NDCA. ECF Nos. 61-14, 61-15, 61-16, 61-19. While Apple's employees in Austin and third-party entities in the WDTX perform work related to the accused technology, the Court finds that more design and development for the accused functionality likely takes place in the NDCA. For those reasons, the Court concludes that this factor weighs at least slightly in favor of transfer.

### iii.    *Familiarity of the Forum with the Law That will Govern the Case*

Apple and DoDots agree that this factor is neutral; both forums are familiar with the law that will govern this case. ECF No. 60 at 15; ECF No. 95 at 15. The Court agrees.

### iv.    *Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

Apple and DoDots agree that this factor is neutral—there are no potential conflicts here. ECF No. 60 at 15; ECF No. 95 at 15. The Court agrees.

## IV.    CONCLUSION

Having considered the private and public interest factors, the Court finds that three factors are neutral, four favor transfer to varying degrees, and one slightly disfavors transfer to the NDCA. A decision to uproot litigation and transfer is not the consequence of a simple math problem. Instead, a moving party must show that the transferee forum is a clearly more convenient forum. Here, the Court finds that Apple has met its burden of showing that the NDCA is a clearly more convenient forum. The Court's conclusions for each factor are summarized in the following table:

| Factor | The Court's Finding |
| --- | --- |
| Relative ease of access to sources of proof | Favors transfer |
| Cost of attendance for willing witnesses | Favors transfer |
| Availability of compulsory process to secure the attendance of witnesses | Slightly favors transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Slightly weighs against transfer |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest | Slightly favors transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

**IT IS THEREFORE ORDERED** that Apple's Motion to Transfer Venue to the Northern District of California is **GRANTED** (ECF No. 60).

**SIGNED** this 25th day of July, 2023.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE